**IN the INTEREST OF E.R.W., a Child**

**NO. 14-17-00178-CV**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed September 5, 2017

Barbara J. Stalder, for Appellant.

Trey David Picard, for Appellee.

Panel consists of Chief Justice Frost and Justices Boyce and Jewell.

## OPINION

Kem Thompson Frost, Chief Justice

In this appeal we address an issue of first impression in Texas: whether the current version of Family Code section 107.013—"Mandatory Appointment of Attorney Ad Litem for Parent"—provides a non-indigent parent with a statutory right to representation by counsel in a suit by the government for termination of parental rights. Concluding that it does, we next consider whether a parent may challenge the trial court's termination of parental rights based on ineffective assistance of the parent's retained counsel. We conclude that a parent may assert such a challenge, though the parent's challenge in this appeal is unsuccessful.

## INTRODUCTION

Appellant M.L. ("Mother") appeals the trial court's final decree terminating her parental rights and appointing the Department of Family and Protective Services ("Department") as sole managing conservator of her child E.R.W. ("Erin").[1] On appeal, Mother challenges the trial court's emergency removal of Erin from Mother's care. Mother also contends her retained counsel provided ineffective assistance. We affirm.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2015, the Department received a referral related to M.H.[3] ("Mindy"), then age ten, and Erin, then age two, alleging, among other things, that Mother might have been abusing prescription medication and methamphetamines and neglecting the two-year-old child. During the Department's investigation, Mother tested positive for methamphetamines. Her history with the Department included a 2012 referral for neglectful supervision. Mother was on probation for two 2013 driving-while-intoxicated convictions. Mother underwent a family-based services assessment. Following a substance-abuse assessment, Mother received a recommendation for inpatient treatment.

Mother agreed to place Erin with an aunt in a parental-child safety placement, but after a while the aunt indicated she could not care for Erin much longer. In considering additional placement options for Erin, Mother suggested the child's grandfather ("Grandfather") and his fiancée. Grandfather's fiancée told the Department of physical altercations between the Grandfather and the fiancée, at least one of which occurred in Mother's presence. Mother then agreed to a new parental-

---

1. We use pseudonyms to refer to appellant, her child, and other family members. *See* Tex. Fam. Code Ann. § 109.002(d) (West 2014); Tex. R. App. P. 9.8.

2. The trial court also terminated father J.W.'s parental rights, but he has not appealed the termination.

3. The Department later placed Mindy with her father, M.H., and the Department's petition in this case was limited to Mother's rights as to Erin.

child placement for Erin with her friend Sam and Sam's mother Margaret.

Shortly thereafter, in July 2015, the Department caseworker received Mother's drug test results indicating "Amphetamines; Benzodiazepine; Opiate/Amp: 6049 ... Methamp: > 10000 ... Benzo: 485 ... Hydrocodone: 3321 ng/ml." Mother failed to show up for a scheduled psychological evaluation. Mother did not complete her inpatient treatment or initiate other services identified in the Family Service Plan, and drug tests included numerous positives.

Mother engaged in behavior that Erin's caregivers reported to the Department. Margaret contacted the Department's caseworker and informed the caseworker she had requested a "no trespass" for the child's grandmother ("Grandmother"), who had come to the house insisting on taking Erin. A few days later, Margaret again contacted the caseworker stating Mother had threatened to revoke the parental-child safety plan for Erin.

Later that summer, the caseworker received a call from Sam about difficulties Sam and Margaret were experiencing with Mother. Sam had brought Erin to Grandfather's home for a visit. After the visit, Sam placed Erin in his vehicle and as he was getting in, Mother took the child from Sam's vehicle, went into Grandfather's home, and locked the door. The caseworker contacted law enforcement for assistance. When the caseworker arrived at Grandfather's home, Grandfather told her to get off his property. Mother would not participate in a phone conversation or respond to the caseworker's text messages.

The caseworker then contacted the Brazoria County Sheriff's Office to meet her at Grandmother's home. The officers indicated no one answered the door at the home, but they heard a child crying. Sometime later, when Mother and Grandmother

left the property, Lake Jackson Police officers pulled them over. Erin was with Mother and Grandmother. The Lake Jackson police officer informed the caseworker not to contact Mother because she was violent. He told the caseworker that Mother had accused Sam of molesting Erin. At that time, the police arrested Mother for a probation violation and released Erin to the caseworker. The Department then placed Erin in a foster home.

The Department filed a petition for termination of Mother's parental rights to Erin. During the bench trial that followed, the trial court heard testimony from nine witnesses over a four-day period. At the conclusion of the trial, the trial court terminated Mother's parental rights, citing the predicate findings under Family Code sections 161.001(1)(E) (concerning endangerment of the child) and (O) (failure to comply with a service plan). The trial court also found that termination of Mother's parental rights was in Erin's best interest. The trial court appointed the Department as sole managing conservator.

## ISSUES PRESENTED

Mother raises two issues on appeal. In her first issue, Mother challenges the sufficiency of the evidence supporting the trial court's emergency removal of the child. In her second issue, Mother alleges ineffective assistance of her retained counsel.

## EMERGENCY REMOVAL OF THE CHILD

Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(1) of the Family Code; and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(1), (2) (West 2014); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). Mother contends "that the Department

failed to prove by clear and convincing evidence that Mother engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical health or emotional well-being of the child at the time the child was removed on August 6, 2015." Mother further contends the Department failed to provide clear and convincing evidence that Erin was in imminent danger and there were exigent circumstances when Erin was removed and placed in foster care. We construe Mother's argument as challenging the trial court's temporary order issued after an adversary hearing related to the emergency removal.

 The Department's emergency removal of Erin on August 6, 2015 was the subject of a September 10, 2015 adversary hearing. After the hearing, the trial court issued temporary orders appointing the Department as Erin's temporary managing conservator. Mother could have challenged the removal and temporary orders under section 262 of the Family Code through a mandamus proceeding. *See In re J.D.S.*, 494 S.W.3d 387, 389 (Tex. App.—Waco 2015, no pet.) (holding that the trial court's decision to allow Department to maintain custody of child following an adversary hearing is reviewable, if at all, through petition for writ of mandamus); *see also In re M.N.M.*, No. 14-17-00328-CV, 524 S.W.3d 396, 399–406, 2017 WL 2819349, at *3–9 (Tex. App.—Houston [14th Dist.] June 29, 2017, orig. proceeding) (granting mandamus relief as to trial court's decision to allow Department to maintain custody of child following an adversary hearing); *In re Pate*, 407 S.W.3d 416, 418–20 (Tex. App.—Houston [14th Dist.] 2013, orig. proceeding) (same as *In*

*re M.N.M.*). She did not do so. Because the trial court since has rendered a final judgment, Mother's complaints about the temporary orders authorizing emergency removal are moot. *See L.F. v. Dep't of Family & Protective Servs.*, No. 01-10-01148-CV, 2012 WL 1564547, at *14 (Tex. App.—Houston [1st Dist.] May 3, 2012, pet. denied) (declining to consider the courts temporary orders authorizing emergency removal after final order of termination entered) (mem. op.). Therefore, we overrule Mother's first issue.

### INEFFECTIVE-ASSISTANCE-OF-COUNSEL CLAIM

Mother contends the trial court erred in terminating her parental rights because she received ineffective assistance of counsel during critical times in the proceedings and suffered irreparable harm. Mother asserts her original retained counsel failed to render effective assistance because he did not appear for the adversary hearing related to the emergency removal. Mother contends her second retained counsel failed to render effective assistance by not appearing at a hearing on the Department's motion to modify Mother's visitation.[4]

In response to the ineffective-assistance allegations, the Department points out that the counsel about whom Mother complains are lawyers Mother retained rather than appointed counsel. The Department contends Mother cannot challenge the trial court's judgment based on ineffective assistance of retained counsel.

### *Retained versus Appointed Counsel*

In support of its argument that Mother cannot challenge ineffective assistance of

---

4. In June 2016, Mother asserted she was indigent and requested appointment of counsel under Family Code section 107.013(a). *See* Tex. Family Code Ann. § 107.013(a) (West, Westlaw through 2017 R.S.). The trial court appointed counsel to represent Mother, and that attorney represented Mother at trial in this case. Mother does not assert that the court-appointed lawyer rendered ineffective assistance of counsel.

retained counsel, the Department cites to several decisions from sister courts of appeal. *See In re Z.C.*, No. 12-15-00279-CV, 2016 WL 1730740, at *2 (Tex. App.—Tyler Apr. 29, 2016, no pet.) (mem. op.); *In re J.B.*, No. 07-14-00187-CV, 2014 WL 5799616, at *5 (Tex. App.—Amarillo Nov. 6, 2014, no pet.) (mem. op.); *In re V.G.*, No. 04-08-00522-CV, 2009 WL 2767040, at *12 (Tex. App.—San Antonio Aug. 31, 2009, no pet.) (mem. op.). The Eighth Court of Appeals in El Paso has applied an analysis similar to the analyses of these three courts. *See In re A.B.B.*, 482 S.W.3d 135, 140–41 (Tex. App.—El Paso 2015, pet. denied). All conclude that a non-indigent parent may not assert an ineffective-assistance claim based on the representation of retained counsel in a suit by a governmental entity to terminate the parent-child relationship ("Termination Suit"). *See In re Z.C.*, 2016 WL 1730740, at *2; *In re A.B.B.*, 482 S.W.3d at 140–41; *In re J.B.*, 2014 WL 5799616, at *5; *In re V.G.*, 2009 WL 2767040, at *12. These courts appear to base this conclusion on the following premises:

> (1) Ineffective assistance of counsel may be asserted only by one who has a constitutional or statutory right to be represented by counsel; and
>
> (2) A non-indigent parent represented by retained counsel in a Termination Suit has no constitutional or statutory right to be represented by counsel in the suit.

*See In re A.B.B.*, 482 S.W.3d at 141.

■ Courts have based a party's right to assert ineffective assistance of counsel on the party's constitutional or statutory right to assistance of counsel. *See Cuyler v. Sullivan*, 446 U.S. 335, 343–45, 100 S.Ct. 1708, 1715–16, 64 L.Ed.2d 333 (1980); *In re M.S.*, 115 S.W.3d 534, 544–45 (Tex. 2003) (discussing statutory right of indigent parents to appointed counsel in parental-ter-

mination cases). Though a right to assistance of counsel in civil cases developed long ago under the common law, courts have declined to allow parties to assert ineffective assistance of counsel based on a common-law right to assistance of counsel; instead, courts have required a constitutional or statutory right to assistance of counsel before a party may assert ineffective assistance of counsel. *See Faretta v. California*, 422 U.S. 806, 823, 95 S.Ct. 2525, 2535, 45 L.Ed.2d 562 (1975) (recognizing that the right to assistance of counsel developed long ago under the common law); *In re A.L.H.*, 515 S.W.3d 60, 87 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (concluding that a party has no general right to assert ineffective assistance of counsel in a civil case); *In re A.B.B.*, 482 S.W.3d at 140 (concluding that a party may not assert ineffective assistance of counsel in a civil case unless the party has a constitutional or statutory right to assistance of counsel); *Smith v. Smith*, 22 S.W.3d 140, 151 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (recognizing a civil litigant's common-law right to assistance of counsel). We presume that Mother may not assert ineffective assistance of counsel unless she has a constitutional or statutory right to assistance of counsel. This right to assistance of counsel refers to a party's right to have an attorney represent the party in a case rather than a party's right to a court-appointed lawyer if the party is indigent, although the indigent party's right to appointment of counsel is based on a right to assistance of counsel. *See Cuyler*, 446 U.S. at 343–45, 100 S.Ct. at 1715–16; *In re M.S.*, 115 S.W.3d at 544–45.

The Supreme Court of the United States, in *Lassiter v. Dep't of Soc. Servs. Of Durham Cnty., N.C.*, determined that an indigent parent's due-process rights under the United States Constitution do not

require states to appoint counsel to represent the indigent parent in all Termination Suits. *See Lassiter v. Dep't of Soc. Servs. Of Durham Cnty., N.C.,* 452 U.S. 18, 31–33, 101 S.Ct. 2153, 2160–2162, 68 L.Ed.2d 640 (1981). The *Lassiter* court held that, in a given case, the trial court, after balancing three factors, may determine that due process requires the appointment of counsel for an indigent parent in a Termination Suit. *See id.* In so holding, the *Lassiter* court noted that the states are free to provide by statute a greater right to counsel in a Termination Suit than the United States Constitution mandates and that a majority of the states already had provided for appointment of counsel to indigent parents in Termination Suits. *See Lassiter,* 452 U.S. at 33–34, 101 S.Ct. at 2163. The Tyler, Amarillo, San Antonio, and El Paso courts of appeals appear to conclude that a parent has no general right under the United States Constitution to representation by counsel in a Termination Suit. *See Lassiter,* 452 U.S. at 31–33, 101 S.Ct. at 2160–2162; *In re A.B.B.,* 482 S.W.3d at 141. Likewise, these courts seem to conclude that a parent has no right under the Texas Constitution to representation by counsel in a Termination Suit. *See In re A.B.B.,* 482 S.W.3d at 141. We presume for the sake of argument that a parent in a Termination Suit has no right under the United States Constitution or the Texas Constitution to representation by counsel.

We now examine whether Family Code section 107.013 provides a non-indigent parent in a Termination Suit with a statutory right to representation by counsel.[5] Several sister courts have concluded that Family Code section 107.013, which mandates the appointment of an attorney ad litem for an indigent parent who responds in opposition to a Termination Suit, does not give a parent the right to challenge the judgment in a Termination Suit based on ineffective assistance of retained counsel. *See In re Z.C.,* 2016 WL 1730740, at *2; *In re A.B.B.,* 482 S.W.3d at 140–41; *In re J.B.,* 2014 WL 5799616, at *5; *In re V.G.,* 2009 WL 2767040, at *12. But, the cases from our sister courts are not on point because these cases apply a prior version of the statute that materially differs from the current version applicable to today's case. *See* Tex. Family Code Ann. § 107.013(a) (West, Westlaw through 2017 R.S.); *In re Z.C.,* 2016 WL 1730740, at *2; *In re A.B.B.,* 482 S.W.3d at 140–41; *In re J.B.,* 2014 WL 5799616, at *5; *In re V.G.,* 2009 WL 2767040, at *12.[6] The First Court of Appeals, in a case also predating the current version of section 107.013, considered a parent's claim of ineffective assistance of retained counsel in a challenge to a judgment terminating the parent-child relationship. *L.F. v. Dep't of Family & Protective Servs.,* Nos. 01-10-01148-CV, 01-10-01149-CV, 2012 WL 1564547, at *12-14 (Tex. App.—Houston [1st Dist.] May 3, 2012, pet. denied) (mem. op.). But the court in *L.F.* did not discuss the right to assistance of counsel. The parties have not cited and research has not revealed any Texas cases addressing whether the current version of the statute provides a non-indigent parent in a Termination Suit with

---

5. Under Government Code section 24.016, a district court has discretion to appoint an attorney to represent an indigent party in a civil case, but this statute is discretionary and does not create a general right to appointment of counsel or assistance of counsel in civil cases. *See* Tex. Gov't Code Ann. § 24.016 (West, Westlaw through 2017 R.S.); *Gibson v. Tolbert,* 102 S.W.3d 710, 711–13 (Tex. 2003).

6. Effective September 1, 2015, the Texas Legislature revised section 107.013, among other things, to add subsection (a-1). Act of May 12, 2015, 84th Leg., R.S., ch. 128, §§ 1,5 2015 Tex. Sess. Law Serv. 1131, 1131–33.

a statutory right to representation by counsel.

In construing Family Code section 107.013, our objective is to determine and give effect to the legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). If possible, we must ascertain that intent from the language the legislature used in the statute and not look to extraneous matters for an intent the statute does not state. *Id.* If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the legislature chose. *See id.*

In Family Code section 107.013, the Legislature provides as follows:

(a) In a suit filed by a governmental entity under Subtitle E in which termination of the parent-child relationship or the appointment of a conservator for a child is requested, the court shall appoint an attorney ad litem to represent the interests of:

(1) an indigent parent of the child who responds in opposition to the termination or appointment;

(2) a parent served by citation by publication;

(3) an alleged father who failed to register with the registry under Chapter 160 and whose identity or location is unknown; and

(4) an alleged father who registered with the paternity registry under Chapter 160, but the petitioner's attempt to personally serve citation at the address provided to the registry and at any other address for the alleged father known by the petitioner has been unsuccessful.

(a-1) In a suit described by Subsection (a), if a parent is not represented by an attorney at the parent's first appearance in court, the court shall inform the parent of:

(1) **the right to be represented by an attorney;** and

(2) if the parent is indigent and appears in opposition to the suit, the right to an attorney ad litem appointed by the court.

(b) If both parents of the child are entitled to the appointment of an attorney ad litem under this section and the court finds that the interests of the parents are not in conflict and that there is no history or pattern of past or present family violence by one parent directed against the other parent, a spouse, or a child of the parties, the court may appoint an attorney ad litem to represent the interests of both parents.

(c) Repealed by Acts 2013, 83rd Leg., ch. 810 (S.B. 1759), § 11.

(d) The court shall require a parent who claims indigence under Subsection (a) to file an affidavit of indigence in accordance with Rule 145(b) of the Texas Rules of Civil Procedure before the court may conduct a hearing to determine the parent's indigence under this section. The court may consider additional evidence at that hearing, including evidence relating to the parent's income, source of income, assets, property ownership, benefits paid in accordance with a federal, state, or local public assistance program, outstanding obligations, and necessary expenses and the number and ages of the parent's dependents. If the court determines the parent is indigent, the court shall appoint an attorney ad litem to represent the parent.

(e) A parent who the court has determined is indigent for purposes of this section is presumed to remain indigent

for the duration of the suit and any subsequent appeal unless the court, after reconsideration on the motion of the parent, the attorney ad litem for the parent, or the attorney representing the governmental entity, determines that the parent is no longer indigent due to a material and substantial change in the parent's financial circumstances.

Tex. Family Code Ann. § 107.013(a) (West, Westlaw through 2017 R.S.) (emphasis added).

 Under subsection (a-1)'s unambiguous language, in a suit filed by a governmental entity under Subtitle E (Family Code § 261.001, *et seq.*), in which termination of the parent-child relationship or the appointment of a conservator for a child is requested, a parent has the right to be represented by an attorney, and if the parent is indigent and opposes the termination or appointment, the parent has the right to be represented by a court-appointed attorney ad litem. *See id.* Thus, under the current version of section 107.013, a non-indigent parent in a Termination Suit has a statutory right to representation by counsel. *See id.* Insofar as an indigent parent's right to appointed counsel is concerned, the Supreme Court of Texas has concluded that it would be a useless gesture to recognize the importance of counsel in a Termination Suit, as evinced by a parent's statutory right to representation by counsel in a Termination Suit, and, at the same time, not require that counsel perform effectively. *See In re M.S.*, 115 S.W.3d at 544–45. Applying the same reasoning to a non-indigent parent's

right to representation by counsel under section 107.013, we conclude that this statutory right provides a basis for the parent to challenge a judgment in a Termination Suit based on the ineffective assistance of retained counsel. *See id.*

 Therefore, we hold that (1) a non-indigent parent's right to counsel in a Termination Suit under section 107.013 embodies the right to effective counsel; and (2) a parent may assert an ineffective-assistance claim to challenge a judgment in a Termination Suit even if the parent is not indigent, and even if the parent retained counsel. *See id.*; *Cuyler*, 446 U.S. at 343–45, 100 S.Ct. at 1715–16 (holding that the constitutional right to effective assistance of counsel in criminal cases is based on the constitutional right to assistance of counsel in criminal cases and applies equally to court-appointed lawyers and retained lawyers).[7] Because the Supreme Court of Texas already has determined that the legal standard from *Strickland v. Washington*[8] applies to ineffective-assistance-of-counsel claims by an indigent parent against the parent's court-appointed attorney in a Termination Suit, we apply the *Strickland* standard to Mother's claims against her retained counsel. *See In re M.S.*, 115 S.W.3d at 544–45.

### Strickland Analysis

To prove an ineffective-assistance claim under *Strickland*, the defendant must show that counsel's performance was deficient. To discharge this burden, the defendant must satisfy two prongs. First, the

---

**7.** We note that other courts have held that an indigent parent who retains counsel in lieu of court-appointed counsel cannot raise an ineffective-assistance-of-counsel challenge to the parental-termination judgment. *See, e.g., Z.C.*, 2016 WL 1730740, at *2; *V.G.*, 2009 WL 2767040, at *12. But, again, these cases predate the current version of section 107.013.

As a consequence of our holding today, an indigent parent who retains counsel in lieu of court-appointed counsel may assert an ineffective-assistance-of-counsel claim on appeal of a judgment in a Termination Suit.

**8.** 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

defendant must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense—that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *In re M.S.D.*, No. 14-12-00801-CV, 2013 WL 593444, at *8 (Tex. App.—Houston [14th Dist.] Feb. 14, 2013, no pet.) (applying *Strickland* standard to challenge to termination of parental rights) (mem. op.). Accordingly, Mother must establish that counsel's performance was deficient and this deficient performance prejudiced her case. *In re M.S.*, 115 S.W.3d at 545.

In making the ineffective-assistance determination, we consider the entirety of the circumstances surrounding the case to gauge whether counsel was reasonably effective. *Id.* We afford great deference to counsel's performance, indulging "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). Mother, as the appellant, bears the burden to overcome this presumption. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052; *In re G.S.*, No. 14-14-00477-CV, 2014 WL 4699480, at *22 (Tex. App.—Houston [14th Dist.] Sept. 23, 2014, no pet.) (mem. op.) We will find the performance deficient only if counsel's conduct is "so outrageous that no competent attorney would have engaged in it." *In re G.S.*, 2014 WL 4699480, at *22.

To meet *Strickland's* second prong, Mother must show a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *In re M.S.*, 115 S.W.3d at 550. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. If Mother fails to meet either prong of the *Strickland* test, her ineffective-assistance claim fails. *See In re M.S.*, 115 S.W.3d at 545. We presume for the sake of argument that Mother's counsel was deficient and analyze the record to determine whether there is a reasonable probability that but for counsel's deficient performance the result of the proceeding would have been different. *See id.*

Mother contends the failure of her two retained counsel to appear at two separate hearings is similar to a deprivation of her right to counsel. Mother urges us not to conduct a harm analysis, arguing that doing so would render meaningless her statutory right to counsel. The Department acknowledges that a presumption of prejudice may arise if an indigent parent is denied counsel at a critical stage of the litigation, but argues the circumstances of this case warrant no presumption.

Mother has not shown that she was denied counsel at a critical stage of her trial or one in which her counsel failed to subject the Department's case to meaningful adversarial testing. *See United States v. Cronic*, 466 U.S. 648, 658–59, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). So, we will apply the *Strickland* test—including the second prong harm analysis—to Mother's ineffective-assistance challenge. *See In re G.S.*, 2014 WL 4699480, at *22.

### Retained Counsel's Actions

We begin the analysis by examining what happened at the two hearings at the heart of Mother's ineffective-assistance claims. At the first hearing—an adversary hearing under section 262.201 of the Family Code on September 10, 2015—neither Mother nor her retained counsel appeared.

The following month, Mother, through newly retained counsel, filed an agreed motion to substitute counsel and the trial court granted it. At the second hearing—on the Department's motion to modify visitation terms in the temporary orders on March 24, 2016—again neither Mother nor her retained counsel appeared. A few days later, Mother's second retained counsel filed a motion to withdraw, which the trial court granted. When Mother requested appointed counsel on June 9, 2016, the trial court appointed an attorney to represent her. Seven months later, the parties went to trial on the Department's petition for termination of Mother's parental rights. At trial, Mother's appointed trial counsel actively engaged in the proceeding on Mother's behalf, making objections and vigorously cross-examining the Department's witnesses. Mother makes no complaint about her appointed trial counsel.

### Trial Court's Findings

Ultimately, the trial court terminated Mother's parental rights based on predicate findings under Family Code sections 161.001(1)(E) and (O) and its finding that termination was in the child's best interest. While the trial court made findings under both sections 161.001(1)(E) and (O), a finding under either ground is sufficient to support a termination that the trial court finds is in the child's best interest. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) (noting, "Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."). Even if we presume for the sake of argument that trial counsel's presumed deficiencies affected the trial court's findings under section 161.001(1)(O), the results of the proceeding would not have been different unless the record does not support the trial court's finding under section 161.001(E). *See id.*

Accordingly, we consider whether the record contains legally and factually sufficient evidence to support termination of Mother's parental rights under subsection (E) and a finding that termination was in Erin's best interest. *See In re A.V.*, 113 S.W.3d at 362.

### Legal Sufficiency of the Evidence

■ Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Despite the constitutional magnitude of parental rights, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

■ Due to the severity and permanency of the termination of parental rights, the law imposes a heightened burden of proof, requiring clear and convincing evidence. *See* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *J.F.C.*, 96 S.W.3d at 264.

This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.). In reviewing the legal sufficiency of the evidence in a termination case, we consider all the evidence in the light most favorable to the finding to determine whether a rea-

sonable fact finder could have formed a firm belief or conviction that its finding was true. *See J.O.A.*, 283 S.W.3d at 344; *J.F.C.*, 96 S.W.3d at 266; *C.H.*, 89 S.W.3d at 25. We assume the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence a reasonable fact finder could have disbelieved. *J.O.A.*, 283 S.W.3d at 344; *J.F.C.*, 96 S.W.3d at 266.

In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence, including disputed or conflicting evidence. *J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.* at 109.

Under subsection (E), we consider whether evidence exists that the endangerment of the child's physical and emotional well-being directly resulted from the parent's conduct, including acts, omissions, or failures to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *see also In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). In this context, "endanger" means "to expose to loss or injury; to jeopardize." *In re T.N.*, 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.) (quoting *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam)). A child is endangered when the environment creates a potential for danger that the parent is aware

of but disregards. *In re S.M.L.*, 171 S.W.3d at 477.

Termination under subsection 161.001(1)(E) must be based on more than a single act or omission—the evidence must demonstrate a voluntary, deliberate, and conscious course of conduct by the parent. *In re C.A.B.*, 289 S.W.3d 874, 883 (Tex. App.—Houston [14th Dist.] 2009, no pet.). "Although 'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *In re T.N.*, 180 S.W.3d at 383; *see also In re J.O.A.*, 283 S.W.3d at 336 (holding that endangering conduct is not limited to actions directed toward the child). Danger to the child's well-being may be inferred from parental misconduct alone, and courts may look at parental conduct both before and after the child's birth. *Id.* ("[T]he endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage.").

As a general rule, subjecting a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *See In re J.O.A.*, 283 S.W.3d at 345. Although incarceration alone will not support termination, evidence of criminal conduct, convictions, and imprisonment may support a finding of endangerment under subsection (E). *See In re A.R.M.*, No. 14-13-01039-CV, 2014 WL 1390285, at *8 (Tex. App.—Houston [14th Dist.] Apr. 8, 2014, no pet.); *In re C.A.B.*, 289 S.W.3d at 886. Likewise, illegal drug use may support termination under subsection 161.001(1)(E) because "it exposes the child to the possibility that the parent may be impaired or imprisoned." *Walker*, 312 S.W.3d at 617. A parent's decision to engage in illegal drug use dur-

ing the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being. *In re A.H.A.*, No. 14-12-00022-CV, 2012 WL 1474414, at *7 (Tex. App.—Houston [14th Dist.] Apr. 26, 2012, no pet.) (mem. op.). Additionally, a fact finder reasonably can infer that a parent's failure to submit to court-ordered drug tests indicates the parent is avoiding testing because they were using illegal drugs. *See C.A.B.*, 289 S.W.3d at 885.

During the Department's investigation, Mother agreed to submit to drug testing and the testing revealed methamphetamines use. When the Department investigator discussed the results with Mother, Mother denied that she had used methamphetamines in the last ten years. Mother testified she did not fail the urinalysis in May 2015. When asked how she knew she did not fail, Mother stated "[b]ecause I used synthetic urine." Later, when asked about her testimony that she used synthetic urine, Mother asserted her Fifth Amendment right. When asked why Mother felt the need to use synthetic urine if she had not used drugs in ten years, Mother testified she did not know. Later in her testimony, Mother acknowledged that in 2015, she was using methamphetamines.

During the trial, the court ordered Mother to take a drug test, but when the Department's caseworker arrived at the ordered time, no one answered the door. When asked why she did not go to the court-ordered drug testing, Mother testified that she was home and no one knocked on the door. According to Mother, she found the caseworker's business card, but she did not try to contact the Department. The record contains evidence that the Department requested Mother to take other drug tests and she did not do so.

Additionally, during the Department's investigation Mother admitted to (1) family violence between Mother and Grandfather, (2) past relationships involving domestic violence, (3) prior Department involvement after a car accident involving Erin, and (4) a criminal history including criminal mischief and criminal trespassing. A Brazoria County Sheriff's Officer testified to being involved in calls involving Mother, including disturbances at Grandmother's residence and an incident of violence between Grandfather and Mother. A City of Sweeny Police Officer testified about other incidents of violent behavior involving Mother. During one incident at Grandfather's residence, Mother was identified as the perpetrator and Grandmother the victim. During her arrest for assault, Mother resisted. Shortly thereafter, Mother reported an assault by Grandfather. The officer investigated the incident and cited Grandfather for assault.

■ Though the evidence did not establish that Erin was present during the family-violence episodes, and though some of the criminal history discussed during the Department's investigation predated Erin's birth, the conduct need not occur in the child's presence, and it may occur "both before and after the child has been removed by the Department." *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). And, in any event, the record contains other evidence that the conduct was ongoing. Mother testified she had been arrested four times since Erin was placed in the Department's care.

Mother also testified she has lived in three different homes since the Department became involved with Erin, residing at various times with Grandmother, Grandfather, and Mother's grandmother. The evidence showed Mother moved fre-

quently between the three places and had not been employed since 2014. Grandfather testified he provided all support for Mother and Erin while they were living with him because Mother was unemployed.

Considering the record evidence in the light most favorable to the trial court's finding, we conclude the evidence is legally sufficient to support the trial court's determination that termination of Mother's parental rights was justified under section 161.001(1)(E) of the Family Code. Further, in view of the entire record, we conclude the disputed evidence is not so significant as to prevent the trial court form forming a firm belief or conviction that termination was warranted under section 161.001(1)(E). Accordingly, we conclude the evidence is factually sufficient to support the section 161.001(1)(E) finding.

### Best Interest of the Child

▮ Texas courts presume that keeping the child with the child's natural parent serves the child's best interest. *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The Department carries the burden of rebutting that presumption. *Id.* Proof of acts or omissions under section 161.001(1) is probative of the issue of the child's best interest. *See In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The factors the trier of fact may use to determine the best interest of the child include: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parents' acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re U.P.*, 105 S.W.3d at 230; *see also* Tex. Fam. Code Ann. § 263.307(b) (West 2014) (listing factors to consider in evaluating parents' willingness and ability to provide the child with a safe environment). A finding in support of "best interest" does not require proof of any unique set of factors, nor does it limit proof to any specific factors. *See Holley*, 544 S.W.2d at 371–72.

We begin with the presumption that keeping Erin with her natural parent will serve Erin's best interest. *See In re D.R.A.*, 374 S.W.3d at 533. We also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. *See* Tex. Fam. Code Ann. § 263.307(a) (West 2014).

### Needs of and Danger to the Child

▮ A parent's drug use supports a finding that termination is in the best interest of the child. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.). The fact finder can give "great weight" to the "significant factor" of drug-related conduct. *In re K.C.*, 219 S.W.3d 924, 927 (Tex. App.—Dallas 2007, no pet.); *see also In re B.G.*, No. 14-14-00729-CV, 2015 WL 393044, at *7 (Tex. App.—Houston [14th Dist.] Jan. 29, 2015, no pet.) (mem. op.) (considering a parent's criminal and drug histories in affirming the decision that termination was in the best interest of a child). Mother's history of drug abuse bespeaks a course of conduct that the fact finder reasonably could conclude endangers Erin's well-being. Mother admitted to using methamphetamines around the time of Erin's removal. Additionally, the evidence established Mother used synthetic urine to conceal her

drug activity on at least one drug test and did not take other requested drug tests. This factor weighs in favor of the trial court's best-interest finding.

*Proposed Placement and Stability of Home Environment*

■ The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in a child's best interest. *See In re D.M.*, 452 S.W.3d 462, 472 (Tex. App.—San Antonio 2014, no pet.). Texas courts recognize as a paramount consideration in the best-interest determination the child's need for permanence through the establishment of a "stable, permanent home." *See K.C.*, 219 S.W.3d at 931. Therefore, evidence about the present and future placement informs the best-interest determination. *See C.H.*, 89 S.W.3d at 28.

The record reflects that Mother failed both at securing stable employment and at maintaining stable housing. At the time of trial, Mother was unable to provide for Erin without family assistance. Mother did not know how she would support Erin financially if Erin were returned to her care, even presuming Grandmother and Grandfather would help out.

The record also reflects that Erin was doing well in her current placement. A husband and wife, married three and a half years, agreed to have Erin placed with them because Mother's sister is their niece. According to the wife, it became difficult for Erin to see Mother, but it has gotten easier over time. Erin is not in therapy, has no special medical needs, and appears to be a normal child. According to witnesses, Erin slept normally except "after visits went bad"—a reference to two visits when the police were called before termination of Mother's visitation. On those occasions, Erin had nightmares for a

week and a half. Though Erin's speech was not on target for her age, the placement family is addressing the issue. Erin is doing well in daycare. Erin and her sister Mindy share a strong bond and they have contact as often as possible. Erin also gets to see the placement family's two sons on weekends and the three interact well together.

The placement family has requested conservatorship of Erin and they want her to be placed with their family in an adoption. Erin has been with the placement family for over a year. According to the wife, it is important for Erin to have a stable life. She explained that Erin tends to get "worked up" when Mother arrives late or misses scheduled visits. The Department's caseworkers testified that Erin's placement was meeting her needs and was stable. One caseworker visited with Erin in her current placement and reported the child was healthy, happy, and reaching age-appropriate milestones. Another caseworker testified she believed it was in Erin's best interest for her to remain in her current placement. We conclude this factor weighs in favor of the trial court's best-interest finding.

Applying the applicable *Holley* factors to the evidence, we conclude that legally and factually sufficient evidence supports the trial court's finding that termination of Mother's parental rights is in Erin's best interest. *See In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) (considering the parent's drug use, inability to provide a stable home, and failure to comply with a family-service plan in holding the evidence supported the best-interest finding).

Having concluded that the evidence is legally and factually sufficient to support the trial court's finding terminating Mother's parental rights under section 161.001(1)(E) and that termination is in

Erin's best interest, we conclude that the record evidence supports the trial court's judgment.

 Mother has not established that but for the alleged deficient performance of her retained counsel during pretrial proceedings, the outcome of the trial would have been different. Accordingly, Mother has not met the second prong of *Strickland*. *See In re M.S.*, 115 S.W.3d at 545 (holding that to establish an ineffective-assistance claim, party must successfully establish both prongs of the *Strickland* test). We overrule Mother's second issue.

We affirm the judgment of the trial court.