**Affirmed and Memorandum Opinion filed June 27, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00061-CV

### IN THE INTEREST OF Z.H., A CHILD

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-00119J**

## M E M O R A N D U M   O P I N I O N

Appellant A.H. ("Father") appeals the trial court's final order terminating his parental rights and appointing the Department of Family and Protective Services ("Department") as sole managing conservator of his child Z.H. ("Zach").[1] On appeal, Father challenges the legal and factual sufficiency of the evidence to support (1) the predicate grounds under which the trial court terminated his parental rights, and (2) the trial court's finding that termination was in Zach's best interest. We affirm.

---

[1] We use pseudonyms to refer to appellant, the child, and other family members. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. The Department's Investigation

In January 2018, Mother gave birth to Zach while she was incarcerated for aggravated assault and injury to a child causing serious bodily injury. That charge arose out of another Department investigation concerning Mother's care of Zach's older brother. At the time of Zach's birth, Father denied paternity of Zach and requested a DNA test. The Department already was investigating Father in the case concerning Zach's older brother.

During an interview with the Department's investigator after Zach's birth, Mother explained that before she was incarcerated she was living in a shelter with her two children. Mother told the investigator that she was not in a relationship at that time. The Department removed the two children when Mother was charged with physical abuse of one of them.

The DNA test results indicated that Father was Zach's natural parent. Father has a criminal history spanning several years (2006 – 2013) consisting of the following:

- a May 2006 conviction of criminal trespass;

- a June 2007 conviction of possession of marijuana;

- a May 2012 deferred adjudication on a charge of burglary of a vehicle; and

- an April 2013 deferred adjudication on a felony charge of possession of a controlled substance.

The Department gave Father a family service plan, which included the requirements that Father participate in random drug testing, complete eight weeks

of parenting classes, complete a substance-abuse assessment and follow all recommendations from that assessment, complete a psycho-social assessment and follow all recommendations from that assessment, and maintain stable employment and housing. Father completed some requirements of the plan but did not maintain his sobriety and was discharged from a drug rehabilitation program after two months.

During the investigation regarding Zach's older brother, Father tested positive for phencyclidine (PCP) and marijuana while Mother was pregnant with Zach and thereafter Father then refused drug tests.

## B. Trial

Trial commenced eleven months after Zach's birth. Mother executed an affidavit of relinquishment before trial.

*The Department's Caseworker*

Felicia Huitt, the Department caseworker assigned in this matter, testified that Zach currently was living in an adoptive foster home with his two siblings. Huitt explained that the Department opened this case when Mother, while incarcerated for abusing one of her other children, gave birth to Zach. Huitt confirmed that Father had tested positive for PCP in August 2017, during Mother's pregnancy with Zach. Father also tested positive for PCP on two drug tests in February 2018. According to Huitt, Father refused drug tests in May and August of 2018. Father submitted another positive drug test for PCP in June 2018. Huitt testified that during the first permanency hearing in this case, Father admitted to using PCP at least twenty times since Zach's birth.

According to Huitt, Father completed his individual and group therapy but was discharged as unsuccessful when he could not provide proof of sobriety.

Father completed his substance-abuse assessment and psychosocial evaluation. Father provided proof of income during the investigation, maintained continued contact with the Department's case worker from February through August, but ceased communication thereafter. Over the course of the investigation Father had "a few" visits with Zach, but ultimately the Department suspended the visits because Father failed to submit a negative drug test.

Huitt testified that Zach is in a potentially permanent adoptive placement with his siblings. Zach's current foster parents are meeting all of his needs. Zach is well-bonded with his siblings in this home. Huitt opined that the Department does not believe Father could provide similarly stable circumstances for Zach.

*Court Appointed Child Advocate*

The court appointed child advocate,[2] Etta Pickett, testified that it was in Zach's best interest for Mother's and Father's parental rights to be terminated. According to Pickett, in the foster home Zach lives with a loving family. The foster family is meeting Zach's needs and has the ability to meet his needs far into the future.

*Father*

At the time of trial Father was living in Colorado and working as a plumber. He admitted that he has had a "PCP problem" for the past five years. He testified that he has "worked the program" and has "started over." According to Father, he refused the court-ordered drug tests because he knew his hair follicle test would return positive because it tests at least ninety days back, and would not reflect that he was sober at the time. Father testified that the last time he used an illegal substance was three to six months before trial. Father confirmed he had used drugs

_____

[2] *See* Tex. Fam. Code Ann. § 107.031; *In re K.M.L.*, 443 S.W.3d 101, 106 n.2 (Tex. 2014).

while the Department's investigation was pending.

Father explained that he believed his parental rights should not be terminated because he has "started over." He testified that he had relocated to Colorado to change his surroundings in an effort to maintain sobriety. According to Father, he is now able to take care of his children and he feels he should be given the opportunity to raise his son. Father lives with his aunt and her children. Father testified that he believed he had been successfully discharged from his therapy program and was not informed that he had not completed it due to his failure to provide a negative drug test.

*Foster Mother*

Zach's foster mother testified that she picked Zach up from the hospital where he was born when he was only four days old. Zach's foster mother explained that Zach and his siblings are well-bonded and "absolutely" loved. She confirmed that, given the opportunity, she will bring up the siblings together and care for them for the rest of their lives.

*Termination*

After a brief argument by the Department's counsel, with which the guardian ad litem concurred, the trial court terminated Father's rights under subsections (E) and (O) of section 161.001(b) of the Family Code. *See* Tex. Fam. Code Ann. §§ 161.001(b)(1)(E) & (O). The trial court further found that it was in Zach's best interest for Father's parental rights to be terminated.

## II.  ISSUES AND ANALYSIS

Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(b)(1); and (2) termination is in the best interest of the child. Tex. Fam.

5

Code Ann. § 161.001(b)(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). Father argues the record evidence is insufficient on the predicate termination grounds and on the issue of best interest.

### A. Standard of Review

Due to the severity and permanency of terminating the parental relationship, Texas requires clear and convincing evidence to support such an order. *See* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a "correspondingly searching standard of appellate review." *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018); *see In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

In reviewing legal sufficiency of the evidence in a parental-termination case, we must consider all evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *Id*.; *In re G.M.G.*, 444 S.W.3d 46, 52 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Yet, this does not mean that we must disregard all evidence that does not support the finding. *In re D.R.A.*, 374 S.W.3d at 531. Because of the heightened standard, we also must be mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *Id*.

In reviewing the factual sufficiency of the evidence under the clear-and-convincing burden, we consider and weigh disputed evidence contrary to the finding against all the evidence favoring the finding. *In re A.C.*, 560 S.W.3d at 631; *see In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.O.A.*, 283 S.W.3d at 345. We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

### 1. Endangerment Under Subsection (E)

Father argues the evidence is legally and factually insufficient to support termination under sections 161.001(b)(1)(E) and (O) of the Family Code. Tex. Fam. Code Ann. §§ 161.001(b)(1)(E) & (O). We begin by addressing Father's arguments as to the (E) finding. *See In re N.G.*, No. 18-0508, __S.W.3d __,__, 2019 WL 2147263, at *3 (Tex. May 17, 2019) (per curiam) (providing that "When a parent has presented the issue [of endangerment findings] on appeal, an appellate court that denies review of a section 161.001(b)(1)(D) or (E) finding deprives the parent of a meaningful appeal and eliminates the parent's only chance for review of a finding that will be binding as to parental rights to other children."). We are mindful of the requirement that Father's appeal be meaningful and that we detail our analysis of the sufficiency of the evidence supporting an (E) finding. *In re P.W.*, No. 14-18-01070-CV, __S.W.3d __, __, 2019 WL 2352443 at *7 (Tex. App.—Houston [14th Dist.] June 4, 2019, no pet. h.)

By making the subsection (E) finding, the trial court found that Father engaged in conduct or knowingly placed Zach with persons who engaged in

conduct that endangered Zach's physical or emotional well-being. Tex. Fam. Code Ann. § 161.001(b)(1)(E). A finding of endangerment under subsection (E) requires evidence that the endangerment resulted from the parent's conduct, including acts, omissions, or failures to act. *In re S.R.*, 452 S.W.3d 351, 361 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Termination of the parent-child relationship under subsection (E) must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *Id*. A court properly may consider actions and inactions occurring both before and after a child's birth to establish a course of conduct. *In re A.L.H.*, 515 S.W.3d 60, 91 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

While endangerment often involves physical endangerment, the statute does not require that conduct be directed at a child or that the child actually suffer injury; rather, the specific danger to the child's well-being may be inferred from the parent's misconduct alone. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). A parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re F.E.N.*, 542 S.W.3d 752, 764 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

Father testified that he has had a problem with PCP for the past five years. His criminal records show he was arrested on a felony possession charge in 2013. Father tested positive for PCP while Mother was pregnant with Zach and again in February of 2018, after this investigation began. Father was unable to successfully complete his drug-rehabilitation program and refused court-ordered drug tests on more than one occasion.

Drug abuse and its effect on one's ability to parent can present an endangering course of conduct. *In re J.O.A.*, 283 S.W.3d at 345. Drug use can

8

endanger a child "when the environment creates a potential for danger that the parent is aware of but disregards." *In re E.R.W.*, 528 S.W.3d 251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Father's refusal to submit to drug testing may be treated by the trial court as if Father had tested positive for drugs. *See id.* (factfinder reasonably can infer that parent's failure to submit to drug tests indicates parent is avoiding testing because he was using drugs). Even without considering Father's refusal to submit to drug testing, Father tested positive in February 2018, after the investigation began. *See In re S.R.*, 452 S.W.3d at 361-62 (continued drug use after child's removal may be considered as establishing endangering course of conduct). And, Father admitted that he refused drug tests because he knew they would show positive results.

Father testified that he had turned his life around and had been sober from PCP for the past three to six months. According to Father, he moved to Colorado to avoid the people, places, and things that contributed to his drug habit. But, evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use. *In re J.O.A.*, 283 S.W.3d at 346. Moreover, given that Father can narrow down the term of his sobriety only to a period ranging between three to six months, the trial court reasonably could have concluded that Father's sobriety may not be plausibly certain to continue. Evidence of a recent turnaround should be determinative only if it is reasonable to conclude that rehabilitation, once begun, will surely continue. *In re M.G.D.*, 108 S.W.3d 508, 514 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The record before us does not provide that assurance.

Considering all the evidence in the light most favorable to the (E) finding, assuming the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, disregarding all evidence that a reasonable

factfinder could have disbelieved, being mindful of any undisputed evidence contrary to the finding, and considering that evidence in our analysis, we conclude that a reasonable factfinder could form a firm belief or conviction that Father engaged in conduct that endangered Zach's physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E).

Considering and weighing the disputed evidence contrary to the finding against all the evidence favoring the finding, giving due deference to the trial court's findings, and after an exacting review of the entire record with a healthy regard for constitutional issues at stake, we conclude that in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is not so significant that a factfinder could not reasonably have formed a firm belief or conviction that Father engaged in conduct described in subsection (E). *See In re A.B.*, 437 S.W.3d at 503; *In re J.O.A.*, 283 S.W.3d at 345. Thus, the trial evidence stands factually sufficient to support the trial court's (E) finding.

Because we conclude the evidence is legally and factually sufficient to support the trial court's finding under section 161.001(b)(1)(E), we do not address Father's argument that the evidence is legally and factually insufficient to support the trial court's findings under sections 161.001(b)(1)(O) and 161.001(d).[3]

## 2. Best Interest of the Child

Texas courts presume that keeping children with their natural parent serves

---

[3] Section 161.001(d) prevents a trial court from ordering termination under subsection (O) where a parent establishes by a preponderance of evidence that he was "unable to comply with specific provisions of a court order" and that he "made a good faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of the parent." Because we do not reach Father's argument regarding the sufficiency of the evidence supporting subsection (O), it is unnecessary for us to review Father's argument regarding section 161.001(d), which is a codified defense to section 161.001(b)(1)(O).

the children's best interest. *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g). The Department carries the burden of rebutting that presumption. *Id.* Proof of acts or omissions under section 161.001(b)(1) is probative of the issue of the child's best interest. *See In re S.R.*, 452 S.W.3d at 366. The considerations the trier of fact may use to determine the child's best interest, known as the *Holley* factors, include:

(1) the desires of the child;

(2) the present and future physical and emotional needs of the child;

(3) the present and future emotional and physical danger to the child;

(4) the parental abilities of the persons seeking custody;

(5) the programs available to assist those persons seeking custody in promoting the best interest of the child;

(6) the plans for the child by the individuals or agency seeking custody;

(7) the stability of the home or proposed placement;

(8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and

(9) any excuse for the parent's acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re U.P.*, 105 S.W.3d at 230; *see also* Tex. Fam. Code Ann. § 263.307(b) (listing factors to consider in evaluating parents' willingness and ability to provide the child with a safe environment). A best-interest finding does not require proof of any unique set of factors, nor does it limit proof to any specific factors. *See Holley*, 544 S.W.2d at 371–72.

a. The desires of the child

Zach was eleven months old at the time of trial, and, therefore, too young to communicate his desires. When a child is too young to express his desires, the fact finder may consider that the child has bonded with the foster family, is receiving

good care in that placement, and has spent minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Father has spent little time with Zach because Father's visits were suspended as a result of his failure to submit a negative drug test. Zach has lived with his foster family, including his two blood-related siblings, since he was four days old. Zach has bonded with the family and the family is meeting all his needs.

### b. The present and future emotional and physical danger to the child

A parent's drug use supports a finding that termination is in the best interest of the child. *In re E.R.W.*, 528 S.W.3d at 266. The fact finder can give "great weight" to the "significant factor" of drug-related conduct. *Id*. Father has an admitted five-year history of PCP use. Although there is some of evidence of diminished use, the evidence does not show the recent improvement is reliably certain to continue. *See In re M.G.D.*, 108 S.W.3d at 514. Father's drug habits create a risk of instability and danger to Zach's future.

### c. The stability of the home or proposed placement

The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the child's best interest. *In re E.R.W*, 528 S.W.3d at 267. Texas courts recognize as a paramount consideration in the best-interest determination the child's need for permanence through the establishment of a "stable, permanent home." *See In re K.C.*, 219 S.W.3d 924, 927 (Tex. App.—Dallas 2007, no pet.). Father recently moved to Colorado, where he has a stable job working as a plumber. Father testified that he lives with his aunt and her children. The foster parents also have a stable home, which is the only home Zach has ever known.

### d. The present and future physical and emotional needs of the child

Father has just started down an uncertain path of recovery from a dangerous drug addiction. Unable to provide a single negative drug test during the Department's investigation, Father lacks a track record showing he can sustain sobriety. Father's recovery is too tenuous and short-lived at this point to conclude he could provide for Zach's needs. Zach's foster family has been meeting the child's needs since his birth and stands ready to continue to do so.

Applying the applicable *Holley* factors to the evidence, we conclude that legally and factually sufficient evidence supports the trial court's finding that termination of Father's parental rights is in the Zach's best interest. *See In re E.R.W.*, 528 at 267–68 (considering the parent's drug history in holding the evidence supported the best-interest finding).

### III.    Conclusion

Having concluded the evidence is legally and factually sufficient to support the trial court's finding terminating Father's parental rights under section 161.001(b)(1)(E) and that termination is in the Zach's best interest, we conclude that the record evidence supports the trial court's final order of termination.

We affirm the trial court's final order of termination.

/s/     Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Spain and Poissant.