

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-22-00110-CV

**IN THE INTEREST OF M.V.**, a Child

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2021PA00756
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:      Beth Watkins, Justice

Sitting:         Luz Elena D. Chapa, Justice
                 Irene Rios, Justice
                 Beth Watkins, Justice

Delivered and Filed: June 29, 2022

AFFIRMED

Appellants J.G. (Mother) and M.V., Sr. (Father) appeal the trial court's order terminating

their parental rights to their child, M.V. (born 2021).[1] We affirm the trial court's order.

### BACKGROUND

In April of 2021, the Department received a report that Mother had given birth to "a drug-

exposed child," M.V. At that time, M.V. was still in the hospital following her birth, and a

Department investigator visited the hospital to observe M.V. and to speak with Mother and Father.

Both Mother and Father admitted using illegal drugs. On April 29, 2021, the Department obtained

temporary managing conservatorship over M.V., placed her in foster care, and filed a petition to

---

[1] To protect the privacy of the minor child, we use initials to refer to the child and pseudonyms to refer to her biological parents. TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

terminate Mother's and Father's parental rights in the event reunification could not be achieved. The Department also created family service plans with Mother's and Father's input. Both service plans required Mother and Father to complete a psychological evaluation, parenting classes, individual counseling, and a substance abuse assessment and "all the recommendations from that"; to engage in drug testing; and to maintain or obtain stable housing and income and provide proof of the same. The Department ultimately pursued termination of Mother's and Father's parental rights.

Ten months after removal, the trial court held a one-day bench trial at which Mother and Father appeared. The trial court heard testimony from five witnesses: (1) the Department's initial investigator, Edward Vela; (2) the first Department caseworker assigned to the case, Rebecca Blain; (3) the second caseworker assigned to the case, Deitra Marquez; (4) Mother; and (5) Father. At the conclusion of trial, the court signed an order terminating Mother's and Father's parental rights based on its findings that: Mother had engaged in conduct prohibited by section 161.001(b)(1)(O), (P), and (R); Father had engaged in conduct prohibited by section 161.001(b)(1)(O) and (P); and termination of Mother's and Father's parental rights was in the best interest of M.V. The trial court also appointed the Department as M.V.'s permanent managing conservator. Mother and Father appealed.

**ANALYSIS**

Mother and Father challenge the legal and factual sufficiency of the evidence on which the trial court relied to conclude that termination was in the best interest of M.V. Mother also challenges the trial court's finding that appointing Mother as M.V.'s managing conservator was not in M.V.'s best interest.

***Applicable Law and Standard of Review***

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate Mother's and Father's parental rights and that termination was in the best interest of the child. TEX. FAM. CODE ANN. § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). In reviewing the legal sufficiency of the evidence to support the trial court's findings, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id.* at 345. A factual sufficiency review requires us to consider the entire record to determine whether the evidence that is contrary to a finding would prevent a reasonable factfinder from forming a firm belief or conviction that the finding is true. *See id.* The factfinder is the sole judge of the weight and credibility of the evidence. *Id.* at 346.

## *Best Interest*

### *Applicable Law*

Both Mother and Father challenge the legal sufficiency of the trial court's order that termination of their parental rights was in the best interest of M.V. There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d 92, 97 (Tex. App.—San Antonio 2017, pet. denied). To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors[2] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has used a similar list of factors[3] to determine a child's best interest. TEX. FAM. CODE ANN. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015,

---

[2] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[3] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Finally, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may judge a parent's future conduct by his or her past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

Drug use can destabilize the home and expose children to physical and emotional harm if not resolved. *See, e.g.*, *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *8 (Tex. App.—San Antonio Aug. 21, 2019, pet denied) (mem. op.). Additionally, "[c]ontinued illegal drug use [by the parent] . . . is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct, and that termination is in the best interest of the child." *In re D.M.M.*, No. 14-16-00664-CV, 2017 WL 61847, at *5 (Tex. App.—Houston [14th Dist.] Jan. 5, 2017, pet. denied) (mem. op.).

*Application*

*Mother's Best Interest Challenge*

Mother does not challenge the trial court's predicate findings that she: (1) failed to comply with her court-ordered service plan; (2) used a controlled substance in a manner that endangered M.V.'s health and safety and either failed to complete a substance abuse treatment program or continued to use after completing a program; and (3) was the cause of M.V. being born addicted to a controlled substance. TEX. FAM. CODE ANN. § 161.001(b)(1)(O), (P), (R). These predicate findings are probative on the trial court's best interest finding. *In re C.H.*, 89 S.W.3d at 28; *In re*

*J.A.M.*, No. 04-21-00146-CV, 2021 WL 4296044, at *4 (Tex. App.—San Antonio Sept. 22, 2021, no pet.) (mem. op.).

In addition to these predicate findings, several of the statutory and *Holley* best interest factors are relevant here. Department caseworker Marquez testified that the Department's biggest concern in this case was "[c]ontinued drug use" by Mother and Father, who lived together as a couple throughout this case. *See* TEX. FAM. CODE § 263.307(b)(8) (factfinder conducting best interest analysis may consider history of substance abuse by child's family). It is undisputed that Mother used opiates prior to delivery and methamphetamines during her pregnancy. The Department presented evidence that M.V. was "required to stay in the NICU for approximately 12 days" after her birth, experienced withdrawal symptoms for which she received morphine, and has continued to experience withdrawal symptoms. The Department removed M.V. shortly after her birth, and although she was still an infant at the time of trial, the Department presented evidence that she required physical and occupational therapy "just to make sure that she continued to develop normally." *See* TEX. FAM. CODE § 263.307(b)(1), (3) (factfinder may consider child's age and physical or mental vulnerabilities and the circumstances of any harm to the child); *Holley*, 544 S.W.2d at 371–72 (factfinder may consider child's present and future emotional and physical needs).

Mother's service plan required her to undergo drug tests, to complete a drug assessment, and to follow the recommendations of that assessment. Caseworker Blain testified that both Mother and Father admitted to drug use "before M.V. was born." However, she stated they made "no admission of drug use since she was born," and Mother testified that she has not used any drugs other than her prescribed methadone since M.V. was born. Mother told Blain that she was enrolled in a methadone treatment clinic, and Blain confirmed Mother's enrollment in the clinic. Blain also testified, however, that Mother only submitted to one drug test for the Department, a

July 2021 hair follicle test that was positive for amphetamines and methamphetamines. *See id.* Mother told Blain that she was undergoing drug testing through the methadone clinic, but Blain testified Mother did not sign releases that would have allowed the Department to confirm this or learn the results of those tests. *See In re C.M.*, No. 04-13-00406-CV, 2013 WL 5508390, at *3 (Tex. App.—San Antonio Oct. 2, 2013, no pet.) (mem. op.) (considering parent's failure to show "negative drug tests or some proof of rehabilitation"). Marquez testified that she sent Mother for drug tests three times, but Mother did not complete any of those tests. *See In re N.M.H.*, No. 04-18-00264-CV, 2018 WL 3998598, at *1 (Tex. App.—San Antonio Aug. 22, 2018, pet. denied) (mem. op.) (considering parent's failure "to submit to some of the requested drug tests" in best interest analysis). Mother testified that the methadone clinic drug tests her every month and that the last time she had been tested was two weeks before trial, but she did not specify what the results of that test were. She agreed, moreover, that she had told her caseworkers she did not have any proof of the results of the tests she took at the clinic. *See In re C.M.*, 2013 WL 5508390, at *3.

It is undisputed that Mother underwent the substance abuse assessment required by her service plan. Blain testified the assessment did not recommend inpatient treatment, but Marquez testified it did. Mother agreed that "[t]here was recommendations for inpatient." The trial court had the sole authority to resolve this conflicting testimony. *See In re R.J.G.*, No. 04-21-00498-CV, 2022 WL 1158680, at *3 (Tex. App.—San Antonio Apr. 20, 2022, no pet. h.) (mem. op.). Marquez testified, and Mother agreed, that Mother did not "follow[] through with" the recommendation for inpatient treatment. *See* TEX. FAM. CODE § 263.307(b)(10), (11); *In re S.M.P.M.*, No. 04-19-00345-CV, 2019 WL 5927456, at *4 (Tex. App.—San Antonio Nov. 13, 2019, pet. denied) (mem. op.). Mother testified she "did not agree with . . . inpatient therapy, because at that time, I didn't believe that it was something we could do. So I reached out to my caseworker and I asked her if there was another outpatient program that we could be enrolled in or do some other type of therapy that we

could substitute for inpatient." Marquez testified that while she encouraged Mother and Father to both attend inpatient drug treatment, she also "made alternative recommendations as far as one [parent] going inpatient while one continues outpatient. And [Mother and Father] weren't willing to follow through with that either." The trial court could properly consider Mother's failure to complete inpatient treatment in its best interest analysis. *See In re S.M.P.M.*, 2019 WL 5927456, at \*4.

Mother's service plan also required her to undergo individual counseling, and the evidence shows the Department assigned Mother to a counselor named Vickie Caylor. Marquez testified that she spoke with Caylor before trial and Caylor told her "she has the referral, but there was no contact with [Mother] until recently." Mother testified that when she tried to contact Caylor to arrange her counseling, Caylor told her she "was just waiting for an e-mail address to contact me to send me the intake paperwork to receive my signatures on." When asked if she gave Caylor the e-mail address, Mother responded, "I was unaware that she needed an e-mail address from me." Both Blain and Marquez testified that to the best of their knowledge, Mother had not completed her required individual counseling. *See* TEX. FAM. CODE § 263.307(b)(10), (11). In contrast to Blain's and Marquez's testimony, Mother testified that she was receiving individual counseling, albeit not with Caylor. She could not remember if she had told Marquez about that counseling, but she testified that she told Blain. Mother agreed, however, that the allegation that she was not attending counseling was discussed during a hearing that she attended "about a week-and-a-half" before trial. When asked why she did not inform the court at that time that she was attending counseling, Mother stated, "I made mention to my attorney, not at the moment, but after the fact." The trial court had the sole authority to resolve this conflict between Mother's testimony and the caseworkers' testimony. *See In re R.J.G.*, 2022 WL 1158680, at \*3. Based on this evidence, the trial court could have reasonably determined that Mother did not show a "willingness and

ability . . . to seek out, accept, and complete counseling services and to cooperate with and facilitate" the Department's supervision. TEX. FAM. CODE § 263.307(b)(10).

Blain testified that both parents indicated to her that they wanted to work their assigned services to turn their lives around for M.V.'s benefit. Similarly, the Department's investigator, Vela, testified that both parents told him "they would do whatever it took to get their little girl back." Blain testified, however, that Mother "was kind of late starting services. She did her psychological evaluation and took about a month break." *See Holley*, 544 S.W.2d at 371–72 (factfinder may consider parent's acts or omissions); *In re K.K.*, No. 05-18-01254-CV, 2019 WL 1233267, at *8 (Tex. App.—Dallas Mar. 15, 2019, no pet.) (mem. op.) (considering parent's delay in beginning service plan). Blain testified Mother did not give a reason for her delay in engaging in other services: "She basically just told me that they were really busy. And whenever she did actually start doing the initial assessment for the substance abuse services, she said that it was a lot of work that they were going to have to do." *See In re K.K.*, 2019 WL 1233267, at *8; *see also* TEX. FAM. CODE § 263.307(b)(10), (11) (factfinder may consider family's willingness to cooperate with Department and effect positive changes).

Mother testified that the home she and Father share is appropriate for a child and that they had sufficient income and "all the living arrangements and necessities" they would need to care for M.V. However, Blain testified that Mother did not provide the Department with proof of employment, income, or housing as required by her service plan. *In re A.L.J.*, No. 01-19-00251-CV, 2019 WL 4615826, at *8 (Tex. App.—Houston [1st Dist.] Sept. 24, 2019, no pet.) (mem. op.). It is undisputed that Mother does not have a job and relies on Father's income. While Blain agreed that Mother did not have to show she was employed to retain her parental rights, she testified that she asked Mother for proof of Father's income and Mother "stopped responding to [Blain's] e-mails with regard to that." Blain twice attempted to visit Mother and Father's home to evaluate it,

but she could not locate their residence. When she called them to help her locate their home, "they did not answer." Like Blain, Marquez attempted to locate Mother and Father's home but was unable to do so. As a result, neither Blain nor Marquez was able to evaluate the appropriateness of the home. Based on this evidence, the trial court could have reasonably concluded that the Department showed Mother did not "demonstrate[] adequate parenting skills, including . . . a safe physical home environment." *See* TEX. FAM. CODE § 263.307(b)(12).

The evidence shows that M.V. has been in the same foster home since the Department removed her from the hospital after her birth. The Department's caseworkers testified that the foster parents are providing a safe and stable environment for M.V., are meeting her physical and emotional needs, and want to adopt her. *See* TEX. FAM. CODE ANN. § 263.307(a) ("[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest."); *In re S.R.H.*, No. 04-21-00525-CV, 2022 WL 1394557, at *5 (Tex. App.—San Antonio May 4, 2022, no pet.) (mem. op.).

Mother testified that she did not know why the caseworkers were unable to locate her residence because "it's a very, very small [trailer] park. There's only ten units, ten trailers. And so, I don't believe that that would be an issue." She argues that the evidence shows her visits with M.V. went well and were appropriate. She also argues the evidence shows she has not used drugs since the day M.V. was born and that she has been actively enrolled in treatment at a methadone clinic since the day after M.V.'s birth. Finally, she argues that because the July 2021 drug test was a hair follicle test, its positive result shows only the residual effects of drugs she ingested prior to M.V.'s birth.

The record shows that Mother and the Department presented conflicting evidence about M.V.'s best interest, particularly with regard to Mother's compliance with the recommendations of her drug assessment and her service plan's requirement of individual counseling. However, in

determining the best interest of a child, "a trial court is not bound to accept the truth or accuracy of a parent's testimony, either as to past actions or future intentions." *In re D.M.*, 452 S.W.3d 462, 472 (Tex. App.—San Antonio 2014, no pet.). Moreover, it is essentially undisputed that Mother did not provide the Department with proof that she was undergoing drug testing. *See In re C.M.*, 2013 WL 5508390, at \*3. The evidence shows Mother missed multiple drug tests required by the Department and did not give the Department authorization to review any test results from the methadone clinic. Furthermore, Marquez testified that both parents appeared to be under the influence of drugs during their visits with M.V. in September or October of 2021. While the parents explained their behavior by "stat[ing] that they go to the methadone clinic prior to their visitation" and that methadone "can mimic the same issues as far as being under the influence," the trial court, in making a credibility determination, could have reasonably inferred that Mother was still using illegal drugs. *See In re E.R.W.*, 528 S.W.3d 251, 265 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of Mother's parental rights was in M.V.'s best interest. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule Mother's first issue.

*Father's Best Interest Challenge*

Father does not challenge the trial court's predicate findings that he: (1) failed to comply with his court-ordered service plan; and (2) used a controlled substance in a manner that endangered M.V.'s health and safety and either failed to complete a substance abuse treatment program or continued to use after completing a program. TEX. FAM. CODE § 161.001(b)(1)(O), (P).

These unchallenged predicate findings are probative on the trial court's best interest finding. *In re C.H.*, 89 S.W.3d at 28; *In re J.A.M.*, 2021 WL 4296044, at *4.

Vela testified that when he visited the family in the hospital after M.V.'s birth, Father told him he had battled "a lifelong addiction" to heroin. *See* TEX. FAM. CODE § 263.307(b)(8). Father's service plan required him to undergo drug tests, to complete a drug assessment, and to follow the recommendations of that assessment. Father testified that he was enrolled in the same methadone clinic as Mother, but the Department was not able to confirm this claim. Blain testified that a drug test Father took for the Department in May of 2021 was positive for morphine and methadone, and Father testified that he tested positive for amphetamine, methamphetamine, and morphine in July 2021. *See id.* Father told Blain he had a prescription for methadone, but again, Blain was not able to confirm this. Marquez testified that Father missed several drug tests requested by the Department. *See In re N.M.H.*, 2018 WL 3998598, at *1; *see also Holley*, 544 S.W.2d at 371–72 (factfinder may consider parent's acts or omissions).

As noted above, Marquez testified that both parents' drug assessments recommended inpatient treatment. It is undisputed that Father did not participate in inpatient drug treatment. Father testified this was because he "never got any kind of information or any kind of instruction stating that" inpatient treatment was required. However, Marquez testified that Father affirmatively refused to undergo inpatient treatment "due to being the sole financial support" for the family. *See* TEX. FAM. CODE § 263.307(b)(10). Marquez also testified that Mother and Father were at one point enrolled in drug treatment with Elite Counseling but "were dropped due to being recommended for inpatient" in September of 2021. Mother testified that she and Father completed approximately three months of substance abuse treatment with Elite Counseling "before we were no longer asked to participate" after an "incident or issue with [Father] and his counselor." *See id.*; *see also Holley*, 544 S.W.2d at 371–72.

Blain testified that the Department assigned Father to a specific counselor for his individual counseling, and she stated Father "was provided with that counselor's information back in May" of 2021 during a family group conference. Blain testified that to the best of her knowledge, Father never started the individual counseling required by his service plan. *See* TEX. FAM. CODE § 263.307(b)(10). Father testified that he did not know the identity or contact information of his Department-assigned counselor. He testified that he made efforts to communicate with Marquez on this point but "got no response." The trial court was not required to accept this testimony as true. *See In re D.M.*, 452 S.W.3d at 472.

As noted above, neither of the Department's caseworkers had an opportunity to evaluate the appropriateness of the home Mother and Father shared. *See* TEX. FAM. CODE § 263.307(b)(12). Additionally, the evidence shows that neither Mother nor Father responded to the Department's attempts to obtain proof of Father's income. *See In re J.A.M.*, 2021 WL 4296044, at *4. Marquez testified that Mother and Father did not have any support system that she was aware of, but Father testified he has support from his parents and sisters. *See* TEX. FAM. CODE § 263.307(b)(13) (factfinder may consider whether child's family has adequate support system).

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of Father's parental rights was in M.V.'s best interest. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule Father's arguments to the contrary.

Having overruled Father's sole issue, we affirm the trial court's order as to Father.

### *Conservatorship*

Mother also argues the trial court abused its discretion by finding that appointing her as M.V's managing conservator was not in M.V.'s best interest. We review a trial court's

conservatorship rulings for abuse of discretion. *See In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007).
In making a conservatorship decision, a trial court has broad discretion in determining a child's
best interest. *In re J.J.R.S.*, 607 S.W.3d 400, 404 (Tex. App.—San Antonio 2020), *aff'd*, 627
S.W.3d 211 (Tex. 2021). We may not reverse a trial court's conservatorship ruling unless it was
arbitrary or unreasonable. *Id.*

As Mother notes, the Texas Family Code requires a child's parent to be appointed
managing conservator "unless the court finds that appointment of the parent or parents would not
be in the best interest of the child because the appointment would significantly impair the child's
physical health or emotional development." TEX. FAM. CODE ANN. § 153.131(a). "It is a rebuttable
presumption that the appointment of the parents of a child as joint managing conservators is in the
best interest of the child." TEX. FAM. CODE ANN. § 153.131(b). Here, however, we have already
concluded the evidence was legally and factually sufficient to support the trial court's finding that
terminating Mother's parental rights was in M.V.'s best interest. Because the standard of review
"is more stringent for termination decisions than for those regarding conservatorship," we cannot
say the trial court abused its discretion by refusing to appoint Mother as M.V.'s managing
conservator. *See In re A.S.*, No. 04-14-00505-CV, 2014 WL 5839256, at *3 (Tex. App.—San
Antonio Nov. 12, 2014, pet. denied) (internal quotation marks omitted) (mem. op.).

## CONCLUSION

We affirm the trial court's termination order.

Beth Watkins, Justice