

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00668-CV

**IN THE INTEREST OF A.R.P.**

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-PA-01013
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:    Patricia O. Alvarez, Justice
Irene Rios, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: January 24, 2024

AFFIRMED

Appellant appeals the trial court's order terminating her parental rights to her two-year-old daughter A.R.P.[1] On appeal, she argues the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the best interest of her daughter. We affirm.

## BACKGROUND

On June 27, 2022, the Department of Family and Protective Services ("the Department") filed the underlying suit to terminate appellant's parental rights, along with an affidavit in support of the emergency removal of then seven-month-old A.R.P. After a bench trial, the trial court

---

[1]To protect the identity of the minor children, we refer to the parties by fictitious names, initials, or aliases. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

terminated appellant's parental rights pursuant to section 161.001(b)(1)(N), (O), and (P) of the Texas Family Code. The trial court also found that termination of her parental rights was in the child's best interest. On appeal, appellant argues the evidence is legally and factually insufficient to support the trial court's best-interest finding.

### SUFFICIENCY OF THE EVIDENCE

*A. Standard of Review*

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence that parental rights should be terminated pursuant to one of the predicate grounds in subsection 161.001(b)(1) and that termination of parental rights is in the best interest of the child. TEX. FAM. CODE § 161.001(b)(1), (2). In reviewing the legal sufficiency of the evidence to support these findings, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). In reviewing the factually sufficiency of the evidence, we consider disputed or conflicting evidence. *Id*. at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. (quoting *In re J.F.C.*, 96 S.W.3d at 266). Under these standards, the factfinder is the sole judge of the weight and credibility of the evidence. *Id*.

*B. Best-Interest Finding*

There is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). In determining whether the child's parent is willing and able to provide the child with a safe environment, the trial court should

consider the relevant factors set out in section 263.307. *See* TEX. FAM. CODE § 263.307(b).[2] In addition to these statutory factors, in considering the best interest of the child, a factfinder may also consider the nonexclusive list of factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976).[3] The *Holley* factors are neither all-encompassing nor does a court need to find evidence of each factor before terminating the parent-child relationship. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *see In re E.A.R.*, 672 S.W.3d 716, 722 (Tex. App.—San Antonio 2023, pet. denied) (noting that a best-interest finding does not require proof of any particular factor). "Evidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re E.A.R.*, 672 S.W.3d at 722 (quoting *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied)). Finally, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may also judge a parent's future conduct by her past conduct. *In re E.A.R.*, 672 S.W.3d at 722; *In re E.D.*, 419 S.W.3d 615,

---

[2]These factors include (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with: (A) minimally adequate health and nutritional care; (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development; (C) guidance and supervision consistent with the child's safety; (D) a safe physical home environment; (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and (F) an understanding of the child's needs and capabilities; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. TEX. FAM. CODE § 263.307(b).

[3]These factors include, but are not limited to, the following: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the child's best interest; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions that may indicate the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013) (citing *Holley*, 544 S.W.2d at 371-72).

620 (Tex. App.—San Antonio 2013, pet. denied). The predicate grounds for termination may also be probative of best interest. *In re C.H.*, 89 S.W.3d at 28; *In re E.A.R.*, 672 S.W.3d at 722.

At trial, there was evidence that A.R.P. came into the care of the Department because of appellant's arrest for driving while intoxicated. At the time of appellant's arrest for D.W.I., seven-month-old A.R.P. was in the back seat of the car. Officer Paul Newman, a patrol officer with the San Antonio Police Department, testified that on June 26, 2022, at 1:00 a.m., he arrived at the scene and found appellant and A.R.P.'s father on the side of a vehicle arguing. Appellant and A.R.P.'s father had gotten into an argument in the vehicle, and A.R.P.'s father had called a friend to pick him up. His friend arrived, and then appellant intentionally rear-ended the friend's vehicle. Officer Newman testified that appellant had bloodshot red eyes and was unsteady on her feet. Further, her speech was slurred. Officer Newman saw A.R.P. in the back seat. Appellant was arrested for felony D.W.I., and A.R.P. was removed from her parents' care.

During the pendency of this case, appellant has been arrested and jailed multiple times. In September 2022, she was arrested for felony evading arrest, and failure to stop and render aid. In January 2023, she was arrested for criminal mischief and theft. At trial, appellant testified that all those criminal charges were still pending. When questioned about them, she invoked her right under the Fifth Amendment against self-incrimination. The jury was free to draw a negative inference from her invocation of the Fifth Amendment to these specific questions. *See* TEX. R. EVID. 513(c); *see also Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *Wilz v. Flournoy*, 228 S.W.3d 674, 677 (Tex. 2007) (per curiam); *In re I.N.D.*, No. 04-20-00121-CV, 2020 WL 2441375, at *6 (Tex. App.—San Antonio May 14, 2020, pet. denied).

There was also evidence that appellant had committed domestic violence against A.R.P.'s father. The caseworker testified about a "prior incident where [appellant] hit [A.R.P.'s father] over the head with a pipe." According to the caseworker, "they both kind of laughed about it. He said

[the reason] he left the home that night was because he didn't want to get hit over the [head] again with a pipe." The caseworker testified she was concerned neither appellant nor A.R.P.'s father were concerned about the incident or appeared to take domestic violence seriously. The caseworker testified, "They said they fight, but they didn't seem to think it was that much of a problem [in] their relationship."

Additionally, there was evidence appellant had not made the necessary changes to her behavior during the pendency of this case. She failed to regularly attend her domestic violence course and was discharged. She engaged in services required by the family service plan sporadically but did not complete any services despite knowing that doing so was necessary to regain custody.

The caseworker testified that appellant admitted to marijuana and regular alcohol use. As noted above, allegations about appellant's alcohol abuse are the reason A.R.P. came into the Department's care. Further, the caseworker testified that appellant refused to submit to a hair follicle drug test. "[A] fact finder reasonably can infer that a parent's failure to submit to court-ordered drug tests indicates the parent is avoiding testing because they were using illegal drugs." *In re E.R.W.*, 528 S.W.3d 251, 265 (Tex. App.—Houston [14th Dist.] 2017, no pet.). And, despite appellant's substance abuse issues, she failed to complete substance-abuse treatment.

There was also evidence that appellant has not shown she can provide stable housing. The caseworker testified that when appellant "has been released from incarceration, she has initially gone back to her mother's home. And her mother's home was the home that we had the placement breakdown due to neglectful supervision in the home. And they refused to drug test to keep the [appellant's children] in the home."

Appellant has also failed to show stable employment. The caseworker testified that at one point, appellant was working at a liquor store, causing the caseworker to raise concerns due to

appellant's alcohol issues. Appellant testified she was fired from her job in January 2023 after she was arrested for breaking into a Bitcoin machine and attempting to break into a safe.

With regard to A.R.P., the caseworker testified A.R.P. had been placed in a licensed foster home, and the foster parents want to adopt her. According to the caseworker, A.R.P. was bonded with her foster parents and was being "taken care of really well." There had been no issues with A.R.P.'s needs being met, and the foster mother had been very compliant with sibling visits and making sure A.R.P. saw her other siblings.

In looking at all the evidence in the light most favorable to the trial court's finding, we conclude a reasonable trier of fact could have formed a firm belief or conviction that termination of appellant's parental rights was in A.R.P.'s best interest. *See In re J.O.A.*, 283 S.W.3d at 344. While appellant points to services she is currently engaging in, we cannot conclude that "the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction" that termination was in A.R.P.'s best interest. *See id.* at 345. Therefore, we hold the evidence is also factually sufficient to support the trial court's best-interest finding.

We affirm the trial court's order terminating appellant's parental rights.

Liza A. Rodriguez, Justice