

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-24-00334-CV

**IN THE INTEREST OF AM.A.G., AN.A.G.,** and **S.L.A.G.**, Children

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA00272
Honorable Raul Perales, Judge Presiding

Opinion by: Rebeca C. Martinez, Chief Justice

Sitting: Rebeca C. Martinez, Chief Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice[1]

Delivered and Filed: November 6, 2024

AFFIRMED

This appeal arises from the trial court's order, signed after a bench trial, that terminates the parental rights of appellant R.G. ("Father–R.G."), the presumed father of An.A.G. and the alleged father of Am.A.G. and S.L.A.G.[2] In Father–R.G.'s sole issue, he argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of Father–R.G.'s parental rights is in the best interest of An.A.G., Am.A.G., and S.L.A.G. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). We affirm.

---

[1] Justice Irene Rios concurs in judgment only.
[2] We refer to the children and parents by pseudonyms in accordance with the rules of appellate procedure. *See* TEX. R. APP. P. 9.8(b)(2).

**I. BACKGROUND**

In February 2023, the Texas Department of Family and Protective Services (the "Department") initiated the underlying proceeding by filing a petition to terminate parental rights regarding J.A.B., An.A.G., Am.A.G. and S.L.A.G. The Department's petition alleged that L.M.B. ("Mother") was the biological mother of all four children. The Department's petition further alleged that R.J.R. ("Father–R.J.R.") was the father of J.A.B. and that Father–R.G. was the "alleged father" of An.A.G., Am.A.G. and S.L.A.G. Thereafter, the trial court signed an "Order for Protection of a Child in an Emergency" that, among other things, appointed the Department as the children's "temporary sole managing conservator." The children were placed with their maternal aunt. In a status hearing order, the trial court found that Mother, Father–R.G., and Father–R.J.R. had reviewed, signed, and understood a service plan.

The Department's request to terminate the parent-child relationship as to Father–R.G. and Father–R.J.R. — but not Mother — proceeded to a bench trial. At the May 2, 2024 trial, the trial court considered the testimony of: (1) Erinna Rios-Avila, the Department's initial investigator; (2) Jennifer Pena, a Department caseworker who began working on the case in November 2023; and (3) Shanna McGuire, a family drug court monitor. Mother, Father–R.G., and Father–R.J.R. were each represented by separate counsel. However, no parent testified at trial.

After the trial, the trial court signed an order that designated Father–R.G. as the "presumed father" of An.A.G. and the "alleged father" of Am.A.G. and S.L.A.G. The trial court's order states that the trial court found by clear and convincing evidence that Father–R.G.: (1) constructively abandoned An.A.G., Am.A.G., and S.L.A.G. who had been in the permanent or temporary managing conservatorship of the Department for not less than six months (subsection (1)(N) constructive abandonment); (2) failed to comply with specific provisions of a court order

(subsection (1)(O) failure to comply with court order); and (3) used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of An.A.G., Am.A.G., and S.L.A.G., and failed to complete a court-ordered substance abuse treatment program, or after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance (subsection (1)(P) use of controlled substance). *Id*. §§ § 161.001(b)(1)(N), (O), (P). The order further provides that termination of the parent-child relationship between Father–R.G. and An.A.G., Am.A.G., and S.L.A.G. was in each child's best interest (subsection (1)(2) best interest). *Id*. § 161.001(b)(2). The order states that "the parent-child relationship between [Father–R.G.] and the child [An.A.G.] is terminated" and "the parent-child relationship, if any exists or could exist, between [Father–R.G.] and the children [Am.A.G. and S.L.A.G.], the subject of this suit, [is] terminated." The order names Mother the managing conservator of all four children and Father–R.J.R. the possessory conservator of J.A.B.[3]

Father–R.G. timely appeals.

## II. DEPARTMENT'S WAIVER CONTENTION

The termination order provides in relevant part:

12.     Termination of Alleged [Father–R.G.'s] Parental Rights as to [Am.A.G.] and [S.L.A.G.]

    12.1.   The Court finds by clear and convincing evidence that, after having waived service of process or being served with citation in this suit, [Father–R.G.] did not respond by timely filing an admission of paternity or by filing a counterclaim for paternity or for voluntary paternity to be adjudicated under chapter 160 of the Texas Family Code before the final hearing in this suit, pursuant to § 161.002(b)(1) of the Texas Family Code.

---

[3] Father–R.J.R. does not appeal, and he is not a party to this appeal. Relatedly, J.A.B. is not a child subject to this appeal.

The Department emphasizes that Father–R.G. does not challenge these findings as they relate to Am.A.G. and S.L.A.G. It references section 161.002(b)(1) of the Texas Family Code and our opinions in *In re S.J.R.-Z.*, 537 S.W.3d 677, 682–83 (Tex. App.—San Antonio 2017, pet. denied) (op. on reh'g), and *In re M.A.*, No. 04-05-00112-CV, 2005 WL 3115796, at *1 (Tex. App.—San Antonio Nov. 23, 2005, pet. denied) (mem. op.), in support of its contention that Father–R.G. has waived review of the termination order relating to Am.A.G. and S.L.A.G.

Section 161.002(b)(1) of the Texas Family Code provides that "[t]he rights of an alleged father may be terminated if after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160[.]" TEX. FAM. CODE ANN. § 161.002(b)(1). In *In re M.A.*, 2005 WL 3115796, at *1, we held:

> If the alleged father does not file such an admission or counterclaim, section 161.002(b)(1) permits the trial court to summarily terminate his parental rights without requiring the Texas Department of Family and Protective Services ("Department") to prove that the father engaged in one of the types of conduct listed in section 161.001(1) of the Code or that termination is in the best interest of the child.

*In re M.A.*, 2005 WL 3115796, at *1. In *In re S.J.R.-Z.*, 537 S.W.3d at 682, we noted that a father did "not raise an appellate challenge to the trial court's finding that [the father] failed to file an admission of paternity." We further held:

> By failing to raise an appellate challenge to the trial court's finding that [the father] failed to file an admission of paternity, [the father] failed to challenge all of the independent grounds listed in the termination order. Accordingly, this court must accept this unchallenged finding as true and we affirm the trial court's order as to [the father's] termination of his parental rights.

*Id*. at 682–83.

The Department argues that our holdings in *In re S.J.R.-Z.*, 537 S.W.3d at 682, and *In re M.A.*, 2005 WL 3115796, at *1, mean that Father–R.G. waived his challenge to the termination order as it relates to Am.A.G. and S.L.A.G. As in *In re S.J.R.-Z.*, 537 S.W.3d at 682–83, Father–

R.G. does not challenge the trial court's findings under section 161.002(b)(1) as they relate to Am.A.G. and S.L.A.G. Therefore, we must accept these unchallenged findings as true and affirm the trial court's termination order as to Am.A.G. and S.L.A.G. *Id.*

### III. DISCUSSION

We now turn to Father–R.G.'s remaining argument: that the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights is in the best interest of An.A.G.

### A. Standard of Review

A parent-child relationship may be terminated, pursuant to section 161.001 of the Texas Family Code, only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in subsection (b)(1) and that termination is in a child's best interest. *See id.* § 161.001(b)(1), (2). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002). In reviewing the legal sufficiency of the evidence, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* In reviewing the factual sufficiency of the evidence, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited

in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

## B.      Law on Best Interest

It is the burden of the party seeking termination to establish that termination is in the child's best interest. *See In re J.F.C.*, 96 S.W.3d at 266. In a best interest analysis, we apply the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[4] The set of factors is not exhaustive, and no single factor is necessarily dispositive of the issue. *Id.* at 372; *Int. of A.B.*, 269 S.W.3d 120, 126 (Tex. App.—El Paso 2008, no pet.).

We recognize there is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, promptly and permanently placing a child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a). Thus, we also consider the factors set forth in section 263.307(b) of the Family Code. *Id.* § 263.307(b). Additionally, evidence that proves one or more statutory grounds for termination may be probative of a child's best interest, but it does not relieve the Department of its burden to prove best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

In conducting a best interest analysis, we consider direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Additionally, a factfinder may measure a parent's future conduct by her past conduct in determining whether termination of parental rights is in the child's best interest. *Id.* In analyzing the evidence within the *Holley* framework, evidence of each *Holley*

---

[4] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

factor is not required before a court may find that termination is in a child's best interest. *In re C.H.*, 89 S.W.3d at 27.

## C.     Best Interest Evidence & Analysis

Pena testified that Father–R.G. and Father–R.J.R. are brothers and that, at the time of trial, J.A.B. (Father–R.J.R.'s son) was nine years old, An.A.G. was four years old, Am.A.G. was three years old, and S.L.A.G. was two years old. Father–R.G. is also the father to a fourteen-year old daughter ("Eldest Daughter"), but Father–R.G.'s parental rights to Eldest Daughter were not at issue in the underlying termination proceeding.

### 1.     *Domestic Violence*

"Evidence of domestic violence in the home is supportive of a trial court's best-interest finding under the third, fourth, and seventh *Holley* factors: the emotional and physical danger to the child now and in the future, parental abilities, and stability of the home." *In re R.J.*, 579 S.W.3d 97, 116 (Tex. App.—Houston [1st Dist.] 2019, pet. denied); *see also In re C.H.*, 89 S.W.3d at 28 ("While it is true that proof of acts or omissions under section 161.001(1) does not relieve the petitioner from proving the best interest of the child, the same evidence may be probative of both issues.").

Rios-Avila testified that, in February 2023, the Department received a referral that there had been an assault between Mother and Father–R.G. Rios-Avila arrived at the family's residence the night of the incident and found J.A.B., An.A.G., Am.A.G., and S.L.A.G. with the neighbors. Rios-Avila learned that Mother was "under the influence and acting erratic[,]" and that she "tried to enter the neighbor's home[.]" As a result, the neighbors called the police. Mother was taken by EMS to the hospital. Rios-Avila testified that, on the night of the incident, J.A.B. told her that the parents fought. J.A.B. specifically told Rios-Avila that he was scared of going back home

because he believed that he and his siblings "were going to get hurt." Rios-Avila noted that both Mother and Father–R.G. had a history of investigations by the Department. Rios-Avila believed that — at a minimum — the children had been neglected because they were dirty and had cuts. She arranged for them to shower at ChildSafe and to be temporarily placed with their maternal aunt. As part of her investigation, Rios-Avila interviewed Mother; Mother admitted to using drugs and acknowledged there had been domestic violence between her and Father–R.G.

The testimony of Rios-Avila, including her recollection of conversations with J.A.B. and Mother, is sufficient for the trial court to have reasonably formed a firm belief or conviction that the third, fourth, and seventh *Holley* factors favored termination.

### 2.    *Sexual Abuse*

The parental termination proceeding in *In re I.R.H.*, No. 11-17-00070-CV, 2017 WL 3994682, at *2 (Tex. App.—Eastland Sep. 8, 2017, no pet.) (mem. op.), involved the adoptive father of I.R.H., a three-year old girl. "The evidence at trial showed that [the adoptive father] had sexually abused his teenage daughter and stepdaughter and had anger issues." *Id*. at *3. The court held that "[t]he trial court could have considered these facts and concluded that termination of [the adoptive father's] parental rights was in the best interest of I.R.H. based upon her emotional and physical needs now and in the future and upon the emotional and physical danger to [the child], both now and in the future." *Id*. Thus, sexual abuse of siblings implicates the second (a child's emotional and physical needs now and in the future) and third (emotional and physical danger to a child now and in the future) *Holley* factors. *See id*. It also implicates the eighth (acts or omissions which may indicate an improper parent-child relationship) *Holley* factor.

Pena testified that, shortly before trial, the Department had initiated an investigation regarding allegations of sexual abuse by Father–R.G. on J.A.B. Pena noted that this investigation

was "leading to being RTB'd," which Pena later explained meant there was "reason to believe" the allegations. Pena also testified that the Department was investigating allegations that both Father–R.G. and Father–R.J.R. had sexually abused Eldest Daughter. This investigation, according to Pena, was also leading to a "RTB'd." The allegations regarding Eldest Daughter concerned Pena because it meant that Father–R.G. and Father–R.J.R. were "perping" on each other's children.

The testimony of Pena is sufficient for the trial court to have reasonably formed a firm belief or conviction that the second, third, and eighth *Holley* factors favored termination.

### 3. *Available Programs*

Pena testified that Father–R.G. had failed to complete the following social services in his service plan: (1) psychological evaluation, (2) domestic violence classes, (3) parenting classes, (4) a substance abuse assessment, and (5) submit to random drug testing. Pena specifically noted that Father–R.G. stopped going to domestic violence classes, and that the program "dropped" him. In addition to the social services already noted, Father–R.G. followed a visitation plan. Pena conceded that, to Father–R.G.'s credit, he regularly engaged in visits with the children and that the visits went well. During the visits, Father–R.G. brought diapers, toys, and food for the children.

Notwithstanding Father–R.G.'s visits with the children, Father–R.G.'s failure to avail himself of the domestic violence classes, parenting classes, and a substance abuse assessment, implicates the fourth *Holley* factor (the parental abilities of the individuals seeking custody). *Holley*, 544 S.W.2d at 371–72. It also implicates the fifth *Holley* factor (the programs available to assist the individuals seeking custody to promote the child's best interest). *Id*. "A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of his child that he does not have the ability to motivate himself to seek out available

- 9 -

resources needed now or in the future." *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *see also* TEX. FAM. CODE ANN. § 263.307(b)(10), (11) (providing courts may consider willingness and ability of the child's family to seek out, accept, and complete counseling services and willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time); *Holley*, 544 S.W.2d at 371–72 (listing parental abilities of an individual seeking custody and programs available to assist the individual as a best-interest factor).

**4.** *Drug Use*

Pena noted that Father–R.G. had submitted to only one drug test, and the results of it showed that Father–R.G. tested positive for methamphetamines. Since July 2023, Father–R.G. had not submitted to any of the Department's requests for a drug test. "A factfinder may reasonably infer from a parent's refusal to take a drug test that the parent was using drugs." *In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied); accord *In re D.G.*, No. 04-22-00044-CV, 2022 WL 1751370, at *4 (Tex. App.—San Antonio Jun. 1, 2022, pet. denied) (mem. op.).

Father–R.G.'s refusal to submit to a drug test since July 2023 stands in stark contrast to Mother's progression through her substance abuse treatment. Pena testified that Mother's service plan, which was incorporated into a court order, ordered Mother to participate in substance abuse counseling, domestic violence classes, submit to random drug tests, complete a psychological evaluation, receive psychiatric care, and attend individual counseling. In the months following removal, Mother, according to Pena, successfully completed all the services in her service plan. According to Pena, Mother made the changes that the Department sought for reunification, and the children were therefore returned to Mother's care on December 20, 2023. Pena noted that,

since reunification, the Department has made follow up home visits to Mother's home on a weekly basis, and those visits have prompted no concerns on the Department's part. McGuire, the family drug court monitor, confirmed that Mother graduated from the family drug court program.

Father–R.G.'s actual — or inferred — illicit drug use is relevant to multiple *Holley* factors, including a child's emotional and physical needs now and in the future (the second factor), the emotional and physical danger to a child now and in the future (the third factor), Father–R.G.'s parental abilities (the fourth factor), the stability of Father–R.G.'s home (the seventh factor), and the acts or omissions which may indicate an improper parent-child relationship (the eighth factor). *See Holley*, 544 S.W.2d at 371–72. "Additionally, a parent's illegal drug use exposes [a] child to the possibility that the parent may be impaired or imprisoned." *In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) (citing *In re E.R.W.*, 528 S.W.3d 251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.)).

### 5. *Stability of the Home or Proposed Placement*

Pena testified that she did not know where Father–R.G. was residing, where he worked, or how he supported himself. This testimony implicates the seventh *Holley* factor (the stability of the home or proposed placement). *See Holley*, 544 S.W.2d at 371–72 (listing the stability of the home as a best-interest factor). In contrast, Pena testified Mother completed all the social services in her service plan, including substance abuse counseling. Moreover, Pena confirmed that the Department's home visits to Mother's home left it with no concerns. *See In re G.V.*, No. 14-02-00604-CV, 2003 WL 21230176, at *5 (Tex. App.—Houston [14th Dist.] May 29, 2003, pet. denied) (mem. op.) (noting the stability that a proposed placement promises "weigh[s] heavily in the court's finding that termination is in the best interest" of a child). The stability of the home or proposed placement (the seventh factor), weighs in favor of termination regarding Father–R.G.

**D. Best Interest Disposition**

After viewing all of the evidence in the light most favorable to the best-interest finding, we conclude that the trial court could have formed a firm belief or conviction that termination of Father–R.G.'s parental rights was in An.A.G.'s best interest. *See In re J.F.C.*, 96 S.W.3d at 266. The second (a child's emotional and physical needs now and in the future), third (emotional and physical danger to a child now and in the future), fourth (parental abilities of the individuals seeking custody), fifth (programs available to assist the individuals seeking custody to promote the child's best interest), seventh (stability of the home or proposed placement), and eighth (parent's acts or omissions which may indicate that the existing parent-child relationship is improper) *Holley* factors weigh in favor of termination. *See In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio Jul. 25, 2018, pet. denied) (mem. op.) ("Evidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest — especially when the evidence shows the parental relationship endangered the child's safety."). We further conclude that any disputed evidence, viewed in light of the entire record, could have been reconciled in favor of the trial court's best-interest finding or was not so significant that the trial court could not have reasonably formed a firm belief or conviction that termination was in An.A.G.'s best interest. *See In re J.F.C.*, 96 S.W.3d at 266. Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). Father–R.G.'s sole issue is overruled.

## IV. CONCLUSION

We affirm the trial court's parental termination order.

Rebeca C. Martinez, Chief Justice