

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-24-00466-CV

**IN THE INTEREST OF D.A.C.R.**, a Child

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA00945
Honorable Linda A. Rodriguez, Judge Presiding

Opinion by:     Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Luz Elena D. Chapa, Justice[1]
                Liza A. Rodriguez, Justice

Delivered and Filed: December 23, 2024

AFFIRMED

This appeal arises from the trial court's order, signed after a bench trial, that terminates the parental rights of appellant R.R. ("Mother"), the biological mother of D.A.C.R. ("Child").[2] In Mother's sole issue, she argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the best interest of D.A.C.R. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). We affirm.

---

[1] Justice Luz Elena D. Chapa concurs in judgment only.
[2] We refer to Mother and Child by pseudonyms in accordance with the rules of appellate procedure. *See* TEX. R. APP. P. 9.8(b)(2).

**I. BACKGROUND**

In June 2023, the Texas Department of Family and Protective Services (the "Department") initiated the underlying proceeding by filing a petition to terminate Mother's parental rights to Child. Thereafter, the trial court signed an "Order for Protection of a Child in an Emergency" that, among other things, appointed the Department as Child's temporary sole managing conservator. Child was placed in a "foster-to-adopt home." In a "Status Hearing Order," the trial court found that Mother had reviewed, signed, and understood a service plan.

The Department's request to terminate the parent-child relationship proceeded to a bench trial. At the June 10, 2024 trial, the trial court considered the testimony of: (1) D.R., the biological father of Child ("Father"); (2) Mother; (3) Michelle Saldana, the Department caseworker; and (4) A.H., Child's foster father ("Foster Father").

After the trial, the trial court signed an order stating that the trial court found by clear and convincing evidence that Mother: (1) allowed Child to remain in a physically or emotionally dangerous condition or surrounding (subsection (1)(D) endangerment by conditions or surroundings); (2) engaged in conduct or knowingly placed Child with persons who engaged in conduct which endangers the physical or emotional well-being of Child (subsection (1)(E) endangerment by conduct); (3) failed to comply with specific provisions of a court order (subsection (1)(O) failure to comply with court order); and (4) used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and failed to complete a court-ordered substance abuse treatment program, or after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance (subsection (1)(P) use of controlled substance). *Id*. §§ 161.001(b)(1) (D), (E), (O), (P). The order further provides that termination of the parent-child relationship between Mother and

Child, who was two years old at the time of trial, was in Child's best interest (subsection (b)(2) best interest). *Id*. § 161.001(b)(2).[3]

Mother timely appeals.

## II. DISCUSSION

### A. Standard of Review

A parent-child relationship may be terminated, pursuant to section 161.001 of the Texas Family Code, only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in subsection (b)(1) and that termination is in a child's best interest. *See id.* § 161.001(b)(1), (2). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007.

We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002). In reviewing the legal sufficiency of the evidence, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id*. at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id*. In reviewing the factual sufficiency of the evidence, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*.

---

[3] The order also terminates the parental rights of Father to Child. Father does not appeal, and he is not a party to this appeal.

**B.     Law on Best Interest**

It is the burden of the party seeking termination to establish that termination is in the child's best interest. *See id*. In a best interest analysis, we apply the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[4] The set of factors is not exhaustive, and no single factor is necessarily dispositive of the issue. *Id*. at 372; *In re A.B.*, 269 S.W.3d 120, 126 (Tex. App.—El Paso 2008, no pet.).

We recognize there is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, promptly and permanently placing a child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a). Thus, we also consider the factors set forth in section 263.307(b) of the Family Code. *Id*. § 263.307(b). Additionally, evidence that proves one or more statutory grounds for termination may be probative of a child's best interest, but it does not relieve the Department of its burden to prove best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

In conducting a best interest analysis, we consider direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Additionally, a factfinder may measure a parent's future conduct by her past conduct in determining whether termination of parental rights is in the child's best interest. *Id*. In analyzing the evidence within the *Holley* framework, evidence of each *Holley* factor is not required before a court may find that termination is in a child's best interest. *In re C.H.*, 89 S.W.3d at 27.

---

[4] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

C.    **Best Interest Evidence & Analysis**

Saldana testified that Mother's service plan, which was incorporated into a court order, required Mother to, among other things, complete a substance abuse assessment. Mother was also required to follow all recommendations in the assessment, including random drug testing. According to Saldana, the drug assessment resulted in a recommendation that Mother complete outpatient treatment. As for the random-drug-testing requirement, Saldana recalled that the Department asked Mother to submit to thirteen drug tests while the Department's termination petition was pending. Mother, according to Saldana, complied only four times. On November 30, 2023, Mother's drug test was negative. However, the May 3, 2024 drug test, which was administered approximately thirty-eight days before trial, showed that Mother had used methamphetamine. The fourth test was conducted shortly before trial, and the Department was awaiting its results. Mother admitted that methamphetamine was her "drug of choice" and that she had last used it at the beginning of May 2024.

"A factfinder may reasonably infer from a parent's refusal to take a drug test that the parent was using drugs." *In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied); *accord In re D.G.*, No. 04-22-00044-CV, 2022 WL 1751370, at *4 (Tex. App.—San Antonio Jun. 1, 2022, pet. denied) (mem. op.). According to Saldana, Mother missed nine drug tests. Moreover, Mother admitted to using methamphetamine at the beginning of May 2024, which is approximately a month before the June 10, 2024 trial.

Mother's illicit drug use is relevant to multiple *Holley* factors, including Child's emotional and physical needs now and in the future (the second factor), the emotional and physical danger to Child now and in the future (the third factor), Mother's parental abilities (the fourth factor), the stability of Mother's home (the seventh factor), and the acts or omissions which may indicate an

improper parent-child relationship (the eighth factor). *See Holley*, 544 S.W.2d at 371–72. "Additionally, a parent's illegal drug use exposes [a] child to the possibility that the parent may be impaired or imprisoned." *In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at \*4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) (citing *In re E.R.W.*, 528 S.W.3d 251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.)).

Foster Father, an elementary school principal, testified that he had cared for Child for almost a year and that he hoped to adopt Child. Saldana described Child's relationship with his foster parents as "great." She testified that Child is "always smiling. He talks constantly. He's singing, dancing in the home. Very, very happy." As a specific example, Saldana recalled that foster parents sent Saldana a video of Child reciting nursery songs. Foster parents, according to Saldana, ensure that Child is "up-to-date with his medical, his dental, [and] his immunizations." According to Saldana, Child has "just developed a lot" while in the care of foster parents and that they are able to meet all of Child's needs now and in the future.

Out of forty-five potential visits with Child, Saldana noted that Mother made twenty-three and missed twenty-two. Saldana estimated that, while the Department's termination petition was pending, Child had spent approximately eighteen hours with Mother and the rest of the time with foster parents. Nevertheless, Saldana acknowledged that Child and Mother have a bond, but she has not observed the "smiles, singing constantly, talking little boy that [she] see[s] when he's with the foster parents." Saldana did not believe that Mother would be able to meet Child's needs now and in the future because "[s]he continuously uses drugs off and on" and "just actually got into a stable home[.]"

"When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal

time with a parent." *See In re S.J.R.-Z.*, 537 S.W.3d 677, 693 (Tex. App.—San Antonio 2017, pet. denied) (op. on reh'g). In light of the competing testimony, the trial court, as the fact finder, may have found that the child's desires (the first *Holley* factor) weighs in favor of termination.

**D.     Best Interest Disposition**

After viewing all of the evidence in the light most favorable to the best-interest finding, we conclude that the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in Child's best interest. *See In re J.F.C.*, 96 S.W.3d at 266. The first (child's desires), second (a child's emotional and physical needs now and in the future), third (emotional and physical danger to a child now and in the future), fourth (parental abilities of the individuals seeking custody), seventh (stability of the home or proposed placement), and eighth (parent's acts or omissions which may indicate that the existing parent-child relationship is improper) *Holley* factors weigh in favor of termination. *See In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio Jul. 25, 2018, pet. denied) (mem. op.) ("Evidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest — especially when the evidence shows the parental relationship endangered the child's safety."). We further conclude that any disputed evidence, viewed in light of the entire record, could have been reconciled in favor of the trial court's best-interest finding or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination of Mother's parental rights was in Child's best interest. *See In re J.F.C.*, 96 S.W.3d at 266. Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). Mother's sole issue is overruled.

## III. Conclusion

We affirm the trial court's parental termination order.

Rebeca C. Martinez, Chief Justice