

## Fourth Court of Appeals

### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00478-CV

**IN THE INTEREST OF R.E.C.** and **O.S.H.T.**, Children

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA01178
Honorable Kimberly Burley, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Lori I. Valenzuela, Justice
H. Todd McCray, Justice

Delivered and Filed: January 29, 2025

AFFIRMED

This appeal arises from the trial court's order, signed after a bench trial, that terminates the parental rights of appellant C.H. ("Mother"), the biological mother of R.E.C. and O.S.H.T.[1] In Mother's sole issue, she argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the best interest of R.E.C. and O.S.H.T. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). We affirm.

---

[1] To protect the identity of the minor children in this appeal, we refer to the children, Mother, and other family members by aliases or their initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

## I. BACKGROUND

In August 2023, the Texas Department of Family and Protective Services (the "Department") initiated the underlying proceeding by filing a petition to terminate parental rights regarding M.F.C., R.E.C., and O.S.H.T. The petition alleged that R.E.C.S. was the father of M.F.C. and R.E.C., and J.T. was the father of O.S.H.T. Thereafter, the trial court signed an "Order for Protection of a Child in an Emergency" that, among other things, appointed the Department as the children's temporary sole managing conservator. In a status hearing order,[2] the trial court found that Mother had reviewed, signed, and understood a service plan.

The Department's request to terminate the parent-child relationship as to Mother and R.E.C.S. proceeded to a bench trial. At the July 3, 2024 trial, M.F.C. was eighteen years old, R.E.C. was fifteen years old, and O.S.H.T. was two years old. The trial court considered the testimony of: (1) Luz K. Ortegon Vidal, a Department caseworker; (2) Elizabeth Torres, a Department caseworker; (3) S.H., Mother's brother ("Uncle"); (4) M.H., Mother's sister ("Aunt"); and (5) Mother.

After the trial, the trial court signed an order that found only R.E.C. and O.S.H.T. (collectively hereinafter the "Children") were the subject of the Department's pending termination request.[3] The trial court's order states that the trial court found by clear and convincing evidence that Mother: (1) failed to comply with specific provisions of a court order (subsection (1)(O) failure to comply with court order); and (2) used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the children, and failed to complete a court-ordered substance abuse treatment program, or after completion of a court-

---

[2] At trial, this status hearing order was admitted into evidence.
[3] At the conclusion of the trial, the trial court recognized that M.F.C. was eighteen years old, and it stated that it was "going to grant the request of the Department and release the Department as her managing conservator."

ordered substance abuse treatment program, continued to abuse a controlled substance (subsection (1)(P) use of controlled substance). *Id*. § 161.001(b)(1) (O), (P). The order further provides that termination of the parent-child relationship between Mother and the Children was in each child's best interest (subsection (b)(2) best interest). *Id*. § 161.001(b)(2).[4] The order designates J.T. as O.S.H.T.'s sole managing conservator and Uncle as R.E.C.'s sole managing conservator.

Mother timely appeals.

## II. DISCUSSION

### A. Standard of Review

A parent-child relationship may be terminated, pursuant to section 161.001 of the Texas Family Code, only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in subsection (b)(1) and that termination is in a child's best interest. *See id.* § 161.001(b)(1), (2). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007.

We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002). In reviewing the legal sufficiency of the evidence, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id*. at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id*. In reviewing the factual sufficiency of the evidence, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. "If, in

---

[4] The order designates R.E.C.S. as the father of R.E.C., and it terminates R.E.C.S.'s parental rights. R.E.C.S. did not appeal, and he is not a party to this appellate proceeding.

light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*.

## B.      Law on Best Interest

It is the burden of the party seeking termination to establish that termination is in the child's best interest. *See id*. In a best interest analysis, we apply the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[5] The set of factors is not exhaustive, and no single factor is necessarily dispositive of the issue. *Id*. at 372; *In re A.B.*, 269 S.W.3d 120, 126 (Tex. App.—El Paso 2008, no pet.).

We recognize there is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, promptly and permanently placing a child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a). Thus, we also consider the factors set forth in section 263.307(b) of the Family Code. *Id*. § 263.307(b). Additionally, evidence that proves one or more statutory grounds for termination may be probative of a child's best interest, but it does not relieve the Department of its burden to prove best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

In conducting a best interest analysis, we consider direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Additionally, a factfinder may measure a parent's future conduct by her past conduct in determining whether termination of parental rights is in the child's best

---

[5] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

interest. *Id*. In analyzing the evidence within the *Holley* framework, evidence of each *Holley* factor is not required before a court may find that termination is in a child's best interest. *In re C.H.*, 89 S.W.3d at 27.

## C. Best Interest Evidence & Analysis

Mother testified that she uses methamphetamine every day. Mother elaborated that she uses methamphetamine as a "medication," and she compared her daily use of methamphetamine to those who drink coffee every morning. Ortegon Vidal observed that "[Mother] was under the influence" every time Ortegon Vidal met with her. Mother's daily methamphetamine use concerned Ortegon Vidal because Mother, in violation of her safety plan, operated a motor vehicle while R.E.C. was a passenger. Ortegon Vidal explained that, at one point, "[Mother] was residing with her mother, and [Mother] was still around the [C]hildren." The Children were later placed with their Aunt and Uncle. Ortegon Vidal was also concerned for R.E.C. because he was hurt while intervening in a physical altercation between Mother and Aunt.

Mother's illicit drug use is relevant to multiple *Holley* factors, including the Children's emotional and physical needs now and in the future (the second factor), the emotional and physical danger to the Children now and in the future (the third factor), Mother's parental abilities (the fourth factor), the stability of Mother's home (the seventh factor), and the acts or omissions which may indicate an improper parent-child relationship (the eighth factor). *See Holley*, 544 S.W.2d at 371–72. "Additionally, a parent's illegal drug use exposes [a] child to the possibility that the parent may be impaired or imprisoned." *In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) (citing *In re E.R.W.*, 528 S.W.3d 251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.)). In this case, the trial court may have found that Mother placed R.E.C. in danger by operating a motor vehicle with him as a

passenger while under the influence of methamphetamine and that such danger would occur in the future if Mother continued to use methamphetamine as a "medication." *See In re E.D.*, 419 S.W.3d at 620.

That R.E.C. was hurt in an altercation between Mother and Aunt — even if the altercation was not caused by Mother's methamphetamine use — is some evidence of domestic violence, and it further supports the trial court's best interest finding as to the third, fourth, and seventh *Holley* factors. *See In re R.J.*, 579 S.W.3d 97, 116 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) ("Evidence of domestic violence in the home is supportive of a trial court's best-interest finding under the third, fourth, and seventh *Holley* factors: the emotional and physical danger to the child now and in the future, parental abilities, and stability of the home." ).

Torres contrasted Mother's inability to care for the Children with their current placement. She testified that, at the time of trial, R.E.C. was living with his Aunt and Uncle. Torres noted that Aunt and Uncle provide R.E.C. with "a safe and stable home environment" and that they were "willing to provide permanency" to the child. Torres's testimony that R.E.C., who was fifteen years old at the time of trial, wanted to remain with Uncle is evidence supporting the trial court's best interest finding regarding the first *Holley* factor (the child's desires). *See Holley*, 544 S.W.2d at 372. Furthermore, Uncle testified that he is willing to be designated as R.E.C.'s primary managing conservator.

As for O.S.H.T., Torres testified that although O.S.H.T. was initially placed with Aunt and Uncle, in the months leading up to trial, J.T.'s visitation with O.S.H.T. had increased to unsupervised weekend visits. On June 8, 2024, O.S.H.T. transitioned to living with J.T. Torres noted that, after the Department filed its termination petition, J.T. had been consistent in his cooperation with the Department, the Department had no concerns with J.T.'s ability to parent

O.S.H.T., and the Department requested that J.T. receive primary custody of O.S.H.T. Torres elaborated that she reviewed the family service plan with J.T. and that J.T. successfully completed all the services. Torres noted that O.S.H.T. "is very comfortable and bonded with not only [J.T.], but [J.T.'s] girlfriend and her children." For their part, Aunt and Uncle testified that they were committed to ensuring O.S.H.T. maintained a bond with his siblings.

While O.S.H.T. was two years old at the time of trial, Torres's testimony of O.S.H.T's bond with J.T. similarly supports the trial court's best interest finding regarding the first *Holley* factor (the child's desires). *See In re S.J.R.-Z.*, 537 S.W.3d 677, 693 (Tex. App.—San Antonio 2017, pet. denied) (op. on reh'g) ("When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent.").

### D.      Best Interest Disposition

After viewing all of the evidence in the light most favorable to the best-interest finding, we conclude that the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in R.E.C.'s and O.S.H.T.'s best interest. *See In re J.F.C.*, 96 S.W.3d at 266. The first (child's desires), second (a child's emotional and physical needs now and in the future), third (emotional and physical danger to a child now and in the future), fourth (parental abilities of the individuals seeking custody), seventh (stability of the home or proposed placement), and eighth (parent's acts or omissions which may indicate that the existing parent-child relationship is improper) *Holley* factors weigh in favor of termination. *See In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio Jul. 25, 2018, pet. denied) (mem. op.) ("Evidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest — especially when the evidence

shows the parental relationship endangered the child's safety."). We further conclude that any disputed evidence, viewed in light of the entire record, could have been reconciled in favor of the trial court's best-interest finding or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination of Mother's parental rights was in R.E.C.'s and O.S.H.T.'s best interest. *See In re J.F.C.*, 96 S.W.3d at 266. Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). Mother's sole issue is overruled.

### III. CONCLUSION

We affirm the trial court's parental termination order.

Rebeca C. Martinez, Chief Justice